## WALTER A BOON v. GEORGE MOSS.

### GEORGE W. FLOWER, Respondent, v. DENNIS O'BRIEN, Receiver, etc., Appellant.

H. who had been publishing a newspayer, styled "The Watertown Re-Union," contracted to sell to W. "The Watertown Re-Union establishment, including the presses, machinery, type," etc., the purchase price, save a payment made at the time, to be paid in annual installments; W. to have full ownership upon performance by him of the conditions and stipulations of the agreement, and meanwhile to take possession, hold, and use the same as "tenant or bailee." Provision was made that in case of non-performance, H. could take possession. It was agreed that the property should not be sold, save certain specified articles, and in case of sale, other similar property was to be substituted, to be subject to the same conditions. *Held*, that the transaction was a conditional sale, and the title did not vest in the vendee until payment of the consideration; that the good-will of the establishment was embraced in the sale, including the subscription list, name of paper, and other advantages incident to the property; that the good-will of such an establishment was property, although incorporeal in its nature, and the condition as to vesting of title applied thereto.

In an action between B. and M., who succeeded to the interest W. acquired under said contract, and who, as partners, had been publishing said newspaper, in which action a receiver of the partnership property had been appointed, an order was granted directing the receiver to deliver to F., as assignee of H., certain specified property which was in the establishment at the time of the sale, and to sell the residue, retaining the proceeds, subject to the order of the court. *Held*, that the order was not an adjudication against the right of F. to the value of the good-will, and that he was entitled to such value, or sufficient thereof to pay his debt,

As to whether the doctrine of *res adjudicata* will apply to an order made upon special motion, *quære.*

(Argued June 19, 1877; decided September 18, 1877.)

APPEAL from order of the General Term of the Supreme Court in the fourth judicial department, reversing an order of Special Term which set aside the report of a referee, and confirming the report.

This action was brought for a dissolution of a co-partnership between the parties for the accounting, etc.

In September, 1870, one Hall, who was the proprietor of a newspaper published in Watertown, N. Y., known as the "Watertown Weekly Re-Union," and also of a job printing establishment connected therewith, entered into a contract with one Warren, in and by which said Hall in consideration of the sum of $10,000, $1,500 down, and the balance payable in installments, contracted to sell to Warren "The Water-town Re-Union Printing establisment, including the presses, machinery, type of all description, newspaper and jobbing material, tools, implements, etc., appertaining to the said printing business, excepting real estate and accounts, notes and demands due said party of the first part. The party of the second part to have full ownership when the conditions and stipulations of this agreement are fully performed."

The contract contained these clauses: "And it is further agreed that the party of the second part (Warren), has the right, under this agreement to take possession of the said printing establishment, material and property, and use and occupy the same for carrying on the said printing business

on the tenth day of September instant, and of the newspaper type material on the eighth of September, aforesaid, as tenant or bailee of the party of the first part, and continue so to use and occupy the same until the fulfillment of all the stipulations of this agreement, or forfeiture of some stipulation in this agreement to be observed by the party of the second part, in which case the said party of the first part may repossess himself of the same.

" And it is further agreed that the property herein mentioned, and all property substituted for the same, or any part thereof, shall be kept together in the city of Watertown, and used in a prudent and careful manner for printing purposes only, and kept in as good condition and of equal value as the same now is.

" And it is further agreed that no part of the said property shall be sold or disposed of without the consent of said party of first part, except worn-out type, and the large power press.    And in case such sale or sales, the property to be replaced by other printing machinery or material of equal value, to be, in all respects, subject to the same rights and conditions as the property above mentioned."

On or about September 20, 1870, George Moss and Walter A. Boon, the parties hereto, entered into a co-partnership.    They purchased of Warren his interest in and to said agreement, they agreeing to make all payments to Hall, and fully perform said agreement, assuming and agreeing to all obligations of Warren, and to this transfer Hall assented. Moss & Boon, after the transfer of Warren's interest to them, edited and published the Re-Union newspaper and ran the printing business.    For two years Moss & Boon made the payments of principal on said agreement regularly; they bought new machinery in place of old; they sold old type and bought new.    In June, 1872, Moss & Boon started, in connection with their weekly paper, a daily newspaper, called the " Morning Despatch."

On the 17th day of March 1873, Hall assigned to George W. Flower, the appellant, all his interest in the agreement

of sale, and Moss & Boon consented thereto; they also certified and acknowledged " that the full amount of property therein specified and belonging to A. H. Hall is still in our possession as bailees of the same under said contract, and that there is now unpaid on said contract the sum of $6,832.15."

The payment on the agreement of sale due September 1873, was not paid in full. In 1874, this action was commenced. On or about February 15, 1874, such proceedings were had therein, in that O'Brien was appointed and duly qualified as the receiver of the property of Moss & Boon. By the order appointing him, he was authorized to continue the publication of the papers until the further order of the court. · O'Brien immediately took possession of all the property, and for some weeks continued to run the printing establishment, and edit the newspapers. On the 2d day of March, 1874, said George W. Flower filed a petition in this court reciting the ownership of the Hall and Warren agreement of 1870 by him; that the receiver was now in possession of the property covered by said agreement and property substituted therefor, etc., etc., and asking leave to take possession of said property. An order was made thereon allowing him to enforce his rights against said property. On the same day, the receiver also presented to the same court and judge a petition, asking, amongst other relief, that he be authorized to sell the printing establishment, the good-will and subscription lists of the Weekly Re-Union and Morning Despatch, and that such sale be made subject to the claims of lien of Flower and S. Boon, on said property, which liens shall not be impaired or affected in any way thereby. An order was made granting the prayer of such petition.

On the 3d day of March, 1874, the receiver presented to the same judge another petition, asking, among other relief, that the order of March second, granted on Flower's petition, be modified, and changed etc., or amended. An order was made thereon for Flower to show cause, March 9, 1874, why he should not be punished as for a contempt.

On the 6th day of March, 1874,·one Stephen Boon presented a petition, asking, among other relief, the delivery of certain property to him.  On the 9th day of March, 1874, an order was granted, setting aside and amending the order of Flower's, and referring it to a referee to take proof and report to the court, as to the title of Flower and S. Boon to the Re-Union printing house property.  On the coming in of the report, the court decided:  That the agreement of the 2d of Sept., 1870, was a conditional sale merely of the printing house property.  That Flower was entitled under said agreement to a delivery of all the property in the receiver's hands that was in existence, September 2, 1870, and directed a delivery to Flower.  For any property not in the printing house September 2, 1870, but perchased since, Flower was given permission to commence an action against the receiver for the same.  Boon was given permission to commence an action of replevin against said receiver for the property claimed by him, other than that delivered to Flower.  The residue of the property not delivered to Flower or taken by Stephen Boon, in an action brought for that purpose, was directed to be sold at public auction, and the proceeds retained by the receiver to be disposed of as the court shall direct.

Under the last named order, and on the 30th of March, 1874, the receiver sold the printing house property, subscription lists and good-will, excepting the property reserved for Flower, for $7,000.  Flower, prior to the receiver's sale, demanded of the receiver the subscription list and good-will of the weekly Re-Union.  The receiver refused to deliver or pay for same, and under protest from Flower, announced on sale, that he would sell subscription list and good-will.  Subsequent to the said receiver's sale, and pursuant to the order, Flower took possession of certain property that was in the said printing establishment September 2, 1870, and sold the same for $3,000.  On the 14th day of April, 1874, an order was made on the stipulation of the parties referring the issues in this action.

On or about July 18, 1874, the order of reference was

enlarged, and power was conferred on the referee, among other things, to hear and determine all claims upon the fund in the hands of the receiver, the claimants appeared before the referee and made proof of their claims without objection, the referee decided that Flower was entitled to $3,000 of the proceeds of the sale, as the value of the good-will of the concern. The claim of S. Boon was rejected.

*Dorwin & Remington*, for the appellant. The claim of Flower to the good-will of the printing business, and the subscription list could not be maintained under the contract. (14 Am. L. Reg., 1, 329, 649, 713; *Burkhead* v. *Brown*, 5 Sandf., 134; 2 Phil. Ev. C. H. & E. notes, p. 14, note 271.)

*J. Mullin, Jr.*, for the respondent. By the terms of the original agreement, Hall and his assignees were the absolute owners of the property as it then stood, and of the substituted property that was subsequently put in the business. (Story on Sales, § 457 *a*; *Herring* v. *Hoppocock*, 18 N. Y., 409; *Palmer* v. *Kelly*, 56 id., 537; 4 J. R., 157; 13 Wend., 256; *Kenny* v. *Planer*, 3 Daly, 131.) Flower's ownership of the paper included the good-will and the subscription lists. (*Matsell* v. *Flanigan*, 2 Abb. Pr. [N. S.], 459; Collyer on Part., 161–322; Story on Part., 139–142; Story on Sales, 308, 309; *Dayton* v. *Wilkes*, 17 How. Pr·, 510; *Chessam* v. *Dawes*, 5 Russ. E. C., 30; *Williams* v. *Wilson*, 4 Sandf., 379; *Howe* v. *Searing*, 10 Abb. Pr., 264; *Dougherty* v. *Van Nostrand*, Hoff., 68; *White* v. *Jones*, 1 Robt., 321; *Kellogg* v. *Totten*, 16 Abb. Pr., 35, 36; *Miller* v. *Vettle*, 25 How. Pr., 350; *Fenn* v. *Bolles*, 7 Abb. Pr., 202; *Sands* v. *Hoffman*, 64 N.Y., 248; Story on Part, §§ 99, 100; 62 Penn. St., 73; Chitty on Con., 985, 986; *Stephens* v. *De Conta*, 4 Abb. [N. S.], 47.) There was no adjudication as to title to substituted property and good-will of weekly which estopped the respondent. (*Martin* v. *Van Schaick*, 4 Paige, 480; *Kellogg* v. *Totten*, 16 Abb. Pr., 35; Herman

on Estoppels, 100.) The respondent's claim being under bill of sale for purchase money his equities were higher than those of Moss & Boon. (1 Story's Eq., § 553.)

CHURCH, Ch. J. It is unnecessary to approve all the proceedings and practice as a precedent to be followed in similar actions. The parties and persons interested have all had their day in court, with a full opportunity to litigate their respective interests, and no question has been raised, or is now raised, as to the propriety of the various steps taken, or the manner of bringing the case to this court, and I have not, therefore, considered the question of the correctness of the practice adopted. The action is by one partner against another for a dissolution of the partnership and an accounting, and the contention is between Flower claiming as owner or lienor of the good-will of the business and creditors.

The business of the partnership commenced in September, 1870, and consisted in carrying on the business of editing and publishing a newspaper in the county of Jefferson, called the Watertown Re-Union. A portion of the property, consisting of various printing material, had been delivered to Flower, the respondent, by order of the court, and the balance, with the subscription list, and good-will, had been sold by order of the court, when the action was referred to Allen C. Beach to hear, try, and determine the same. Subsequently the referee was authorized, among other things, " to hear and determine upon all claims that may be made upon the fund in the hands of said receiver."

Flower and Stephen Boon respectively claimed a portion of the fund as owners or lienors of portions of the property sold. The referee decided in favor of Flower to the extent of $3,000, and against Boon. Upon a motion to confirm the report, the Special Term reversed the finding in favor of Flower, which, upon appeal by him, the General Term reversed, and affirmed the decision of the referee. The receiver, representing the general creditors and the partners, appealed to this court.

The original contract of sale from Hall, then the owner of the Re-Union newspaper establishment to Warren, is dated September 2, 1870, and it is important to determine the nature of this contract, so far as it affected the title of the property constituting the newspaper establishment, and also as to whether the good-will of the concern was embraced in the transfer. The parties to this action, Moss and Boon, were the assignees of Warren, the vendee, under an agreement to abide by and perform all the obligations of his contract with Hall, and in 1873 Flower became the assignee of the contract from Hall, with the consent of Moss and Boon, so that for all purposes of legal construction in this proceeding, the contract is the same as if made by Flower instead of Hall as vendor, and by Moss and Boon instead of Warren as vendees. By the contract Hall agreed to sell to Warren the property in question under the following description: "The Watertown Re-Union establishment, including the presses, machinery, type of all description, newspaper and jobbing material, tools, implements, etc., appertaining to the said printing business, excepting real estate, and the accounts, notes and demands due said party of the first part." The contract then declares that the party of the second part is "to have full ownership when the conditions and stipulations of this agreement are fully performed." The consideration was $10,000, payable $1,500 at date, $1,500 in one year, and the balance in seven yearly installments. The vendee was to take possession as "tenant or bailee" and hold, use, and occupy the same as such until all of the conditions and stipulations of the agreement were fulfilled, and provision was made that the vendor might take possession for non-fulfillment of any of the stipulations. It was also agreed that the property should not be sold, except the worn out type, and the large power press; and in case of sale, other similar property was to be substituted, which was to be subject to the same rights and conditions as the property above mentioned. We must give effect to the contract as made and intended by the parties, and it seems

to me that the transaction was intended as a conditional sale, and that the title of the property would not vest until the payment of the consideration. It is lawful for parties to make such an agreement. The provision that Warren is to have *full ownership* when he performs the conditions of the agreement, and the provision that he takes possession as " tenant or bailee" are inconsistent with the idea of the transfer of an actual title. No other security was taken upon the property, and the inference is reasonable that the owner intended to retain the title as such security. It is well settled that " when a condition of sale and delivery of goods is that the title shall not pass until the price is paid the vendee has no title in himself, nor can he convey any to a *bona fide* purchaser. (Story on Sales, § 457*a*, and cases cited; 56 N. Y., 637.)

It cannot be doubted that the good-will of the establishment was embraced in the sale. Although not specifically mentioned, it constituted an element of value. The language could not be more comprehensive. " The Watertown Re-Union establishment," including presses, type, etc., necessarily covered everything of advantage pertaining to the business, and notably the subscription list, name of the paper, and other advantages incident to the property. Hall transferred, conditionally, all that he owned belonging to the establishment, and Warren succeeded to all his rights in the same, subject to the terms of the contract.

The general definition of good-will given by Judge STORY is sufficiently explicit. He says : " This good-will may be properly enough described to be the advantage or benefit which is acquired by an establishment beyond the mere value of the capital, stock, funds or property employed therein, in consequence of the general public patronage and encouragement, which it receives from constant or habitual customers, on account of its local position or common celebrity or reputation for skill, or influence, or punctuality, or from other accidental circumstances or necessities, or even from ancient partialities or prejudices."

The good-will of a newspaper establishment often constitutes its largest value. A majority of the subscribers are generally permanent. They become attached to the paper on account of its sentiments, whether political, religious or literary, and the ability and energy with which it is conducted. The habit of reading a particular paper periodically seems to stimulate a desire for its continuance. Subscribers, once obtained, are permanent customers, not only for the paper, but for advertising and job work.

There is one kind of good-will which has been said to be only a probability, that customers will resort to the old place ; and another, far more valuable, when a retiring partner agrees not to engage in the same business in competition with the old establishment. The good-will of a permanent newspaper establishment is generally more tangible than either. The vendor Hall, would not have been permitted to appropriate the subscription list and name of the paper to his own use, for the reason that he had sold it, although he might, perhaps, have printed another newspaper at the same place.

The subscription lists are, in effect, contracts to buy the paper for a specified time, or indefinitely, and belong to and go with the establishment. The rights and privileges which go to make up the good-will of such a concern is property, although incorporeal in its nature. These views accord with the authorities. (Story on Part., § 99, notes and cases cited; 17 How., 510; 4 Paige, 479; 4 Sand. Ch. R,, 405.)

The condition applied to all the property sold, including the good-will. Every thing sold was intended to be held to secure the purchase money.

The point is made that the order of the twentieth March was *res adjudicata* against the right of Flower to the good-will of the concern. Without determining whether this doctrine would, in strictness, apply to an order made upon special motion (see 5 Hill, 493, note *a*), it cannot, I think, be affirmed, that this question was in fact or necessarily adjudicated by that order. The subject of good-will is not expressly

mentioned.    It directs the receiver to deliver to Flower certain property specified in the papers, which was in the establishment on the second day of September, 1870, and authorized him to bring an action for property subsequently purchased.    It also authorized Boon to bring an action, and it directed the receiver to sell all the property not thus delivered or taken by these authorized actions, and retain the proceeds subject to the order of the court.    It did not profess to dispose of all the questions in the case.

The right of Flower to the material under the contract was evidently regarded as clear.    Other questions were intended to be reserved, and were expressly reserved by the direction to retain the fund for future adjudication.

This is confirmed by the subsequent proceedings.    The case was referred to hear, try and determine, and the referee was expressly authorized to hear any claims to the fund. This authority could only have been intended for the benefit of Flower and S. Boon, and they availed themselves of it by litigating their respective claims before the referee with the result before stated.

The fact that Flower did not specify good-will in his papers used on the motion is far from conclusive that he had no claim, or supposed he had none, to such good-will.    He may have supposed that good-will would necessarily follow the other property as an incident, and he did claim it under the order of the twentieth of March, and made a demand of the receiver before he sold for the subscription lists, etc.

The Special Term had before directed the receiver to continue the publication of the paper, probably for the purpose of preserving the benefit of the good-will for whoever it might concern — for creditors, lienors or parties — and a delivery to Flower at that time would have been in conflict with this order.    By the direction of the court, and the acquiescence of all parties, his claim was subsequently litigated and adjudicated.

I am of the opinion that the sale from Hall to Warren was conditional; that it embraced the subscription list and good-

will of the establishment, and that Flower was entitled thereto until his debt was paid ; and, it having been sold, that he is entitled to its value to the extent of paying his debt. This is the legal result—and it is just. From the findings of the referee, the presumption is that the good-will enhanced the price bid to an amount at least equal to its value as found, and this sum being for the purchase money of the property, it is right that the vendor, who, by the terms of sale, held the property for his security, should have the benefit of it in preference to general creditors, who are presumed to have given the firm credit, with knowledge of the situation.

The merits having been correctly decided, we think a proper disposition of the case is to affirm the decision of the General Term, and order judgment accordingly upon the report of the referee.

All concur, except Rapallo, J., absent.

Order affirmed and judgment accordingly.