(109 App. Div. 93.)

AMERICAN ICE CO. v. MECKEL.

(Supreme Court, Appellate Division, First Department. November 24, 1905.)

1. GOOD WILL—SALE—CONSTRUCTION OF CONTRACT.
   Defendant and M., ice dealers, doing business individually, as a company, and as M. Bros., sold the business and good will, agreed to recommend the buyer to their customers, and not to engage in the business, directly or indirectly, within a designated city for a fixed period, provided the covenant should not relate to M.'s existing interest in the business in a certain company. The bill of sale containing the agreements was signed by defendant and M., individually. *Held*, that defendant could not engage in the ice business within the designated city for the fixed period either individually or as partner.

   [Ed. Note.—For cases in point, see vol. 24, Cent. Dig. Good Will, § 5.]

2. SAME—ACTION TO ENFORCE.
   Defendant and M., ice dealers, sold their business and good will, and agreed with the buyer and his assigns not to engage in such business within a designated city for a fixed time. The buyer thereafter transferred the business by a bill of sale conveying all the property used in the business, including the good will "that we recently acquired from S., M., and B." Thereafter the purchaser sued to restrain M. and the original defendant from engaging in the business of selling ice in alleged violation of the original sale, and alleged that it was intended by the bill of sale to plaintiff to transfer the business acquired by the original buyer from defendant and M., and that the name M. in the bill of sale stood for and meant defendant and M. *Held*, that evidence that the purchaser from defendant and M. transferred the business and the good will to plaintiff was admissible.

3. ASSIGNMENTS—RIGHTS ASSIGNABLE—AGREEMENT OF SELLER OF BUSINESS NOT TO ENGAGE THEREIN.

A covenant in a bill of sale of a business, whereby the seller, for himself, heirs, executors, and administrators agreed with the buyer, his executors, administrators, and assigns, not to engage in such business within a designated city for a fixed year, is not personal to the buyer, but is assignable.

4. SAME—TRANSFER.

An owner sold his ice business and good will, and covenanted with the buyer and assigns not to engage in such business for a fixed period within certain territory. The buyer transferred the business, including the good will. Held, that the owner's covenant not to engage in the business passed to the buyer's transferee.

5. INJUNCTION—PRELIMINARY INJUNCTION—GROUNDS—BREACH OF CONTRACT— EVIDENCE.

A seller of his business covenanted with the buyer not to engage in the business for a fixed period within a certain territory. The seller before the expiration of the period entered the employ of an ice dealer within the described territory, and solicited the customers of the buyer, who were the seller's former customers. Held to show a violation of the agreement, entitling the buyer to a temporary injunction.

[Ed. Note.—For cases in point, see vol. 27, Cent. Dig. Injunction, § 121.]

6. APPEAL—ERRORS—CORRECTION.

One appealing from an order granting a temporary injunction may require the Appellate Court to correct an error in the order, though he made no request for such correction in the court below.

Ingraham and McLaughlin, JJ., dissenting.

Appeal from Special Term, New York County.

Action by the American Ice Company against Edward A. Meckel. From an order enjoining defendant during the pendency of the action from engaging in a certain business, he appeals. Modified.

Argued before O'BRIEN, P. J., and McLAUGHLIN, PATTERSON, INGRAHAM, and LAUGHLIN, JJ.

Hyman Pouker, for appellant.
Thomas D. Adams, for respondent.

LAUGHLIN, J. On the 21st day of November, 1898, one Charles Mulford and the defendant, "ice dealers, doing business individually and also in the name and style of West Washington Market Ice Company, also Mulford Bros.," in consideration of the sum of $18,000, executed to Charles W. Morse and William H. Gilshenen, "their executors and administrators and assigns," a bill of sale of the property connected with their ice business and of the business itself, "together with the whole of the good will of said ice business and of our ice routes." The bill of sale contained a covenant of warranty. The vendors further covenanted with the vendees, "their executors, administrators, and assigns," that:

"We will not, either by ourselves, or with any other person or persons, corporation or corporations, do or cause to be done any lawful act or thing to the prejudice of said ice business heretofore carried on and conducted by us in the city of New York, and this day sold to the said parties of the second part, and that we will at all times hereafter, when requested so to do, recommend the said parties of the second part, and their executors, administrators, and assigns, to all our present customers, for the purpose of inducing them to deal with the said parties of the second part, and their executors, administrators, and assigns."

They further covenanted, in consideration of the premises, as follows:

"We do for ourselves, our heirs, executors, and administrators, hereby further covenant and agree to and with the said parties of the second part, their executors, administrators, and assigns, that we will not at any time or times within the period of ten years from the date hereof engage directly or indirectly or concern ourselves in carrying on or conducting the business of selling ice at retail or wholesale, either as principals, agents, servants, or otherwise, within the corporate limits of the city of New York as now legally bound, except upon the written consent of said parties of the second part, or their executors, administrators, or assigns."

The bill of sale contained a liquidated damage clause, by which the vendors bound themselves in the sum of $18,000 liquidated damages for any breach of this covenant on their part, and contained the further clause:

"Provided, nevertheless, that the foregoing covenant is not intended to, and shall not in any way be construed to, relate to the existing interest of said Mulford in the wholesale ice business of the Glasco Ice Company."

The bill of sale was signed by Mulford and Meckel individually.

It is contended by the appellant that these covenants did not preclude him from engaging in business individually, and that they only obligated the vendors to refrain from engaging in business as copartners. The language employed in the bill of sale clearly shows that this was not the intention of the parties. Such a construction would be utterly inconsistent with the clause by which they covenanted not to engage in the business either as principals, agents, servants, or otherwise; and the clause expressly providing that the covenant should not be construed as extending to the existing interest of Mulford in a particular corporation was only necessary upon the theory that the covenant bound them as individuals, as well as copartners. The other covenants by which they obligated themselves to recommend their customers to the vendees and their assigns whenever thereunto requested are not reconcilable with the theory of the appellant. The instrument, taken as a whole, clearly shows that the conditions exacted as a condition of the purchase that the vendors should retire from the business both as partners and individuals within the confines of the city of New York for the period of ten years. The vendees transferred the business to the Crystal Lake Ice Company by a bill of sale on the 24th of December, 1898. This bill of sale was quite general in terms, but it purports to transfer "the ice business, and all the property used in connection with them, including the good will that we recently acquired from N. B. Shute, Charles Mulford, and S. Busch." Then follows a general description of the property, specifying wagons, horses, harnesses, tools, office furniture, blankets, "and the good will of the businesses, which includes about 2,000 customers." The Crystal Lake Ice Company, by a bill of sale on the 21st day of June, 1899, transferred the property which they acquired by virtue of the bill of sale from Morse and Gilshenen to it, including the good will of the business, to one Sprague, who on the same day transferred the same to the plaintiff.

It is further contended on the part of appellant that these restrictive covenants were not assigned by Morse and Gilshenen, and that the plaintiff has not succeeded thereto. It is alleged in the complaint that it was intended by the bill of sale from Morse and Gilshenen to transfer the business acquired by them from Mulford and Meckel, and that the name "Charles Mulford" in the bill of sale "stands for and means Charles Mulford and Edward A. Meckel, the defendant herein." Under these allegations, it will be competent for the plaintiff to prove these facts upon the trial. The defendant was not a party to the subsequent bills of sale, and as against him it may be shown, as alleged, that by the name of Charles Mulford, used in the bill of sale executed by Morse and Gilshenen, was intended Mulford and Meckel, and that part of the business, property, and good will transferred thereby was that acquired under the bill of sale from Mulford and Meckel. Folinsbee v. Sawyer, 157 N. Y. 196, 51 N. E. 994. The terms of the covenants clearly show that they were not intended to be personal to the vendees alone, but they were assignable. Diamond Match Co. v. Roeber, 106 N. Y. 473–487, 13 N. E. 419, 60 Am. Rep. 464; Francisco v. Smith, 143 N. Y. 488, 38 N. E. 980; New York Bank Note Co. v. Hamilton Bank Note Co., 180 N. Y. 292, 73 N. E. 48.

It is also contended that, even if the bill of sale from Morse and Gilshenen relates to the property which they acquired under the bill of sale from Mulford and Meckel, still these covenants on the part of the defendant and Mulford not to engage in the business for the period of 10 years were not assigned. We are of the opinion that the plaintiff has succeeded to these covenants as an incident of the good will, which was expressly assigned. It is manifest that the good will and these covenants formed the principal part of the consideration for the bill of sale from Mulford and Meckel, and also for each successive bill of sale until title passed to the plaintiff. The defendant remained in the business, in the employ of the sucessive owners, and for several years had charge of the business at West Washington Market as the agent of the plaintiff. The plaintiff presents a prima facie case that the defendant left its employ, and entered the employ of one of its competitors, and has endeavored with considerable success to solicit the customers of the plaintiff, who were former customers of Mulford and Meckel, to become customers of his new employer. This is clearly a violation of his covenant, to the right to enforce which the plaintiff has succeeded. The temporary injunction was therefore properly granted. The scope of the order was evidently inadvertently extended to the entire state, whereas it should have been limited to the city of New York. The defendant could doubtless have had this correction made on motion, but he was not obliged to do so, and is entitled to have it corrected here.

It follows that the order should be modified by limiting its scope to the city of New York, and, as modified, affirmed, without costs. All concur, except INGRAHAM and McLAUGHLIN, JJ., who dissent.

INGRAHAM, J. (dissenting). I do not think the plaintiff ever acquired the right to enforce the covenant in the contract between the defendant and Morse and Gilshenen. That covenant was that the vendors, the defendant, and one Mulford would not any time or times within the period of 10 years from the date hereof engage directly or indirectly or concern ourselves in carrying on or conducting the business of selling ice at retail or wholesale, either as principals, agents, servants, or otherwise, within the corporate limits of the city of New York as now legally bound, except upon the written consent of the parties of the second part (Morse and Gilshenen). This was a personal covenant with Morse and Gilshenen. It was undoubtedly a covenant in connection with the transfer of their business; but a mere assignment of the property acquired by Morse and Gilshenen under that contract did not, I think, transfer to the assignee a right to enforce this negative covenant.

I think the motion for an injunction should have been denied.

McLAUGHLIN, J., concurs.