PUBLIC OPINION PUBLISHING COMPANY, Respondent, v. RANSOM, Appellant.

(148 N. W. 838.)

1. Contracts—Printing and Publishing, Sale of Business—Agreement Not to Compete—"Reasonable" Restraint of Trade—Territory—Construction of Statute.

Civ. Code, Sec. 1278, authorizing a seller of a good will of a business to agree with the buyer to refrain from carrying on a similar business within a specified territory, so long as the buyer or his assignee carries on a like business, etc., declares what is a "reasonable" restraint of trade, and should be construed in the light of surrounding circumstances, and the intent of the parties carried out, if such intent is lawful; and held, that a contract between owners of a majority of the stock of a newspaper and publishing corporation, who were active managers and in sole control of its business and property, for sale of such business, subscription list, and good will, in part consideration whereof the sellers agreed with buyer that they would each personally refrain from entering into or carrying on, individually or together as managing agent, etc., of any other concern, and to pay a specified sum as liquidated damages upon violation of the contract, was not void as in restraint of trade, because such individual sellers did not own the corporate good will, nor because the transfer was made by the corporation.

2. Corporations—Sale of Corporation's Business—Stockholders' Agreement Not to Compete, Who May Make.

Under Civ. Code, Sec. 1278, authorizing agreement by seller of good will of a business, not to engage in a similar business, held, that on sale of a business and the good will thereof, by a corporation, under an agreement therefor executed by those owning a majority of the corporate stock and who manage and control the corporate business, such an agreement binds such individual stockholders; the rule being, that all those who, owing to their real control of such good will, are necessary to any transfer thereof, and who, owing to their ownership of stock in the corpration, will be directly benefited by any increase in price received for the good will, may bind themselves not to become competitors.

3. Contracts—Assignments—Agreement Not to Compete in Business—Assigns of Purchaser.

An agreement with the buyer, by sellers of the good will of a business, not to become competitors, is assignable to one to whom the buyer sells such business and good will, though the word "assigns" was not in the original sellers' contract.

**4.  Contracts—Good Will—Agreement Not to Compete—Transfer of By Assignee, Without Covenant.**

> An agreement of seller with buyer of a business and its good will, not to become a competitor, passes, without formal assignment, the good will, as an incident of sale of the business, to one to whom the buyer sells the business and good will, although the good will is not mentioned in assignee's sale contract.

(Opinion filed September 28, 1914.)

Appeal from Circuit Court, Codington County. Hon. CARL G. SHERWOOD, Judge.

Action by the Public Opinion Publishing Company against A. W. Ransom, to recover damages for violation of a contract of sale of good will of a printing and publishing business. From an order overruling a demurrer to the complaint, defendant appeals. Affirmed.

*Irvin H. Myers,* and *McFarland & Johnson,* for Appellant.

*Case & Case,* for Respondent.

(1) Under point one of the opinion, Appellant cited:

Bowers v. Whittle, 63 N. Y. 147, 56 Am. Rpts. 499; Hardeman v. Simonton, 55 Iowa, 144; Roller v. Ott, 14 Kan. 609; Smith v. Gibbs, 44 N. H. 335; High on Injunctions, Sec. 743; Civ. Code, Sec. 1277; Secs. 1277, 1278 and 1279, Rev. Civ. Code; Mapes v. Metcalf (N. D.), 88 N. W. 713; Prescott v. Bidwell, 18 S. D. 64, 99 N. W. 93; Merchants Ad-sign Co. v. Sterling (Cal.), 57 Pac. 468; Dodge Stationery Company v. Dodge, 78 Pac. 879.

Respondent cited:

Palmer v. Toms (Wis.), 71 N. W. 654; Geiger v. Cawley, 109 N. W. 1064; Finger v. Hahn, 42 N. J. Eq. 606; McAuliffe v. Vaughn (Ga.), 33 L. R. A. (N. S.) 255.

(2) Under point two of the opinion, Respondent cited:

Civ. Code, Sec. 1278.

(3) Under point three of the opinion, Appellant cited:

Hillman v. Shannahan, 4 Ore. 163, 15 Am. Rpts. 281; Prescott v. Bidwell (S. D.), 99 N. W. 93; 3 Page on Contracts, Secs. 1259-1262; 2 Am. & Eng. Encyc. of Law, p. 1035.

(4) Under point four of the opinion, Appellant cited:

Hillman v. Shannahan (supra); Chicago Trust & Savings Bank v. The Chicago Title & Trust Company, 190 Ill. 404, 60 N. E. 586, 83 Am. St. Rpts. 138, p. 140; Mapes v. Metcalf, 10 N. D. 601, 88 N. W. 713.

Respondent cited:

Palmer v. Toms (Wis.), 71 N. W. 654; Gompers v. Baxter, 56 Pa. State, 194; Fish Brothers Wagon Company v. Fish (Wis.), 16 L. R. A. 453; Menendez v. Holt, 128 U. S. 514 (32 L. Ed. 526).

WHITING, J. This cause is before us upon an appeal from an order of the circuit court overruling a demurrer to the complaint herein. The demurrer confesses that: Defendant and one C. were the owners and holders of a majority of the capital stock, and were the active managers and in the sole charge and control of the business, property, and plant of a corporation engaged in publishing a daily paper, in carrying on a job printing plant, and in fact in carrying on a general publishing and printing plant in Watertown, Codington county. Defendant and C. gave and devoted their time, influence, and business energy to the promotion of the business of such corporation. Defendant and C., while so controlling said corporation and the property thereof, and with the authority of such corporation, and for it and for themselves and for their own personal benefit and profit (a consideration paid to and received by defendant and C.), sold, transferred, delivered, and caused to be delivered to one B. the entire business, subscription list, and good will of said corporation. With the delivery of said business, subscription list, and good will, and as a part of the consideration paid for it by B., defendant and C. made, executed, and delivered to B. an agreement in writing whereby, for valuable consideration, they agreed that from the time of the completion and consummation of such transfer, and for a period of ten years thereafter, they would each personally refrain from entering into or carrying on, directly or indirectly, as employer, owner, and proprietor, or stockholder, individually or together, or as managing agent or officer for any person, company, or corporation, within Codington county, any printing or publishing business, and did stipulate and agree that, upon violation of such contract, they would forfeit to B. the sum of $5,000 as liquidated damages; said contract being conditioned upon the payment of all notes given for the purchase price of said business. At the time of the transfer of the business and good will of said corporation and of the entering into the above contract, it was contemplated and understood between all the parties above mentioned that a new

corporation, to be known as the "Public Opinion Publishing Company," was to be organized for the express purpose of taking over, owning, operating, and handling the said business formerly conducted by the corporation above referred to; that B. was taking the said business, subscription list, and good will and the aforesaid contract and became the purchaser of the same for himself and others; and that the said Public Opinion Publishing Company was to be organized by B. and others as soon as the same could be organized. Immediately after taking over the said business, subscription list, and good will, and in pursuance of the plan and understanding theretofore made, this plaintiff, the Public Opinion Publishing Company, was duly organized for the purpose of enjoying the good will transferred by the defendant and C. and for the purpose of carrying on and operating the same identical business formerly conducted by the former corporation; upon the organization of plaintiff corporation, all the business, subscription list, and plant of said former corporation taken over by said B., as aforesaid, and all his right, title, and interest, including the above-mentioned written contract and good will, were "turned over and delivered" to plaintiff by B.; and plaintiff has, since its organization, carried on such business at Watertown as the successor of said former corporation. The purchase price notes, forming the consideration of said transfer to B., and which were delivered to defendant and C., have been fully paid. Defendant has violated and broken the conditions of said written contract by knowingly and willfully, and without the consent of plaintiff, becoming an incorporator, stockholder, director, and managing officer in another corporation that is operating, carrying on, and doing a general publishing business, including the publishing of a weekly newspaper, the conducting of a job printing office, and a general publishing and printing business in the said city of Watertown. Demand has been made on defendant by plaintiff for the sum of $5,000 damages. By its complaint plaintiff seeks to recover the said sum of $5,000.

[1-2] Appellant contends: (1) That the contract sued on is void because he and C. were not possessed of the good will of said business at the time of the transfer of such business, they being stockholders only; that the transfer was a transfer by the corporation only; and that, without the sale or transfer of a good will

possessed·by appellant and C., the contract was void.   (2) That the contract sued on was a personal contract with B., and therefore not assignable.   (3) That the contract, if assignable, should have been assigned in writing, and that the mere delivery thereof to plaintiff was not sufficient to give plaintiff a cause of action against defendant.

Appellant says in· his brief:

"This contract was a contract in restraint of trade, and at common law the same was void and without effect."

While it is true that this is a "contract in restraint of trade," and that contracts in *general* restraint of trade were at common law, and are now, void, yet it is also true that the courts of this country have always, and those of England have, at least from a very early date, recognized the validity of a contract in "reasonable" restraint of trade, provided such contract is connected with and an incident of the sale of the good will of the business to which it relates.   There arose a great diversity in the holdings of the various courts as to what constituted a "reasonable" restraint of trade, having regard to the period and territorial extent of such restraint.   Many courts fixed arbitrary rules governing these matters, but in most states "the older cases in which the courts attempted to fix arbitrarily geographical bounds beyond which a contract to forbear from competition would not be enforced have given way to the more rational idea of making every case dependent upon the surrounding circumstances, showing the extent, as to time and territory, of the protection needed."   Cowan v. Fairbrother, 118 N. C. 406, 24 S. E. 212, 32 L. R. A. 829, 54 Am. St. Rep. 733.   In a very. few states, among them being this state, the Legislatures, disregarding the fact that what might be a reasonable restraint, either as to time or territory, under certain conditions, would not be reasonable under other conditions, have enacted statutes fixing limitations both as to time and territory.   We have the following provisions in our Civil Code:

"Sec. 1277.   Every contract by which any one is restrained from exercising a lawful profession, trade or business of any kind, otherwise than as provided by the next two sections, is to that extent void.

"Sec. 1278.   One who sells the good will of a business may agree with the buyer to refrain from carrying on a similar business within a specified county, city, or a part thereof, so long as the buyer, or any person deriving title to the good-will from him, carries on a like business therein.

"Sec. 1279.   Partners may, upon or in anticipation of a dissolution of the partnership, agree that none of them will carry on a similar business within the same city or town where the partnership business has been transacted, or within a specified part thereof."

Under the clear terms of the contract before us, it complies with the statute, so far as the territory to which it applies, and, though it provides that the restraint shall be for "ten years," yet no contention is made that such contract, if otherwise valid, is rendered invalid by providing for such period of restraint instead of "so long as the buyer, or any person deriving title to the good will from him, carries on a like business therein." Our statute having declared what is a "reasonable" restraint of trade, and the contract in question not violating the provisions of such statute, we cannot agree with appellant in his contention for a strict construction of the contract, but hold that the provisions of such contracts should be construed in the light of the surrounding circumstances, and that the intent of the parties should be carried out, if such intent is one which the law sanctions.   Well may the law look with favor upon contracts in "reasonable" restraint of trade; as was said in Cloth Co. v. Lorsont, L. R. 9. Eq. 353:

"All the cases, when they come to be examined, seem to establish this principle: That all restraints upon trade are bad, as being in violation of public policy, unless they are natural, and not unreasonable for the protection of the parties in dealing legally with some subject-matter of contract.   The principle is this: Public policy requires that every man shall be at liberty to work for himself, and shall not be at liberty to deprive himself or the state of his labor, skill, or talent by any contract that he enters into. On the other hand, public policy requires that when a man has by skill, or by any other means, obtained something which he wants to sell, he should be at liberty to sell it in the most advantageous way in the market; and, in order to enable him to sell it advantageously in the market, it is necessary that he should be able to

preclude himself from entering into competition with the purchaser. In such a case, the same public policy that enables him to do that does not restrain him from alienating that which he wants to alienate, and therefore enables him to enter into any stipulation, however restrictive it is, provided that restriction, in the judgment of the court, is not unreasonable, having regard to the subject-matter of the contract."

To like effect is the following from Palmer et al. v. Toms, 96 Wis. 367, 71 N. W. 654:

"The general rule that contracts in restraint of trade are void has its exceptions, one of which is that, for the protection of the good will of an established business, the owner of the same may make a sale thereof with such business, and, as an inducement to the purchaser to buy, part with his liberty to engage in the same business for such limited time and within such limited territory as may be reasonably necessary to protect the purchaser in the enjoyment of such business. With the limitations indicated, the public is not necessarily deprived of the vendor's industry. Such vendor is not prevented from pursuing his occupation but partially. He receives a valuable consideration for the restraint upon his own liberty; and the vendor becomes possessed of substantial benefits by the transaction, without material injury, if any, to the public. Hence the objections are obviated which generally render contracts in restraint of trade void, and they are sustained by universal authority."

It certainly must be conceded that if appellant and C. had purchased the business and good will of the corporation then under their management, and had afterwards conveyed such business and good will to B., and in connection with such conveyance had entered into a contract with their purchaser whereby they each agreed to refrain from entering into the same business in Codington county for a period of ten years, such contract would have been valid for such period, not exceeding ten years, as the purchaser retained and conducted the business; and if it were necessary, in order to sustain the validity of the contract in question, we would not hesitate in holding that defendant is estopped from denying that he and C. contracted to sell, *as their own property,* the property, including the business and good will, then belonging to the corporation, and that when such contract was carried out,

even though the transfer may have been made directly from the corporation to B., the legal effect was in all respects the same as though the title to such property had first passed to defendant and C. and from them to B.

We think there is another reason why this contract should be held valid. Appellant contends that defendant and C., as stockholders, were not the owners of the good will of the corporation under their management; that, not being the owners of such good will, they could not convey the same; and that their contract in restraint of trade must accompany and be incident to a transfer of the good will. We concede that there must be a transfer of the good will to support the contract in restraint of trade. The good will of a publishing business is peculiar and differs materially from the good will of the ordinary mercantile business, in its relative value as compared to the capital engaged in the business, and often in the weakness of the ties uniting it to the business itself and the strength of those ties which unite it to the persons actually conducting the business. We agree with the following from Boon v. Moss, 70 N. Y. 465:

"The good will of a newspaper establishment often constitutes its largest value. A majority of the subscribers are generally permanent. They become attached to the paper on account of its sentiments, whether political, religious, or literary, and the ability and energy with which it is conducted. The habit of reading a particular paper periodically seems to stimulate a desire for its continuance. Subscribers, once obtained, are permanent customers, not only for the paper, but for advertising and job work."

And we also agree with the following from the opinion in Cowan v. Fairbrother, supra:

"Where an editor, by reason of his style, his power, his pathos, his humor, his learning, or of any gift or attainment, attracts subscribers solely by such personal qualities, he imparts a peculiar value to the good will and property of a newspaper, which goes with him, to its injury, when he leaves it, and lends the talent and accomplishments that have given it patronage and popularity to a rival journal in the same vicinity. Where he owns the press and plant, the enhanced value so imparted by him becomes an element of his property, with the same incidental power to dispose of it as attaches to any other of his acquisitions which has a

market value. Beal v. Chase, 31 Mich. 490. But it is not like other property which ordinarily passes by delivery or assignment to the purchaser. Neither an editor, a lawyer, or a physician can transfer to another his style, his learning, or his manners. Either, however, can add to the chances of success and profit of another who embarks in the same business, in the same field, by withdrawing as a competitor."

Let us suppose the case of a party or firm owning a business, in which the good will thereof is a large part of its value, and which good will is largely dependent for its strength and value upon the popularity and individuality of such owner or owners; such owner or owners desire to sell such business and good will; in order to increase the selling price thereof, they are at liberty to and can contract not to become rivals and competitors of their purchaser. Why should it not be possible for a corporation engaged in business to also sell its business and its good will and be able to receive a greater consideration therefor by giving to the purchaser, not only its covenant not to become a rival, but the covenant of those who may in fact hold the good will of the business within their absolute control—the only persons who could in fact and truth become rivals and thus injuriously affect the purchaser's business? We can see no reason why those *whose act is necessary for the real transfer of the good will of a business,* and who by such transfer are able to enhance the selling price of such business and thus bring a direct benefit to themselves, as would be the case of a stockholder in a corporation, should not be permitted to unite in the transfer of the good will of such corporation, and in connection therewith contract not to become rivals and competitors. Every reason which is held to sustain the validity of a contract in restraint of trade, when made by the owner of the business, will sustain the validity of such a contract. We are referred to the cases of Merchants' Ad-Sign Co. v. Sterling, 124 Cal. 429, 57 Pac. 468, 46 L. R. A. 142, 71 Am. St. Rep. 94, and Dodge Stationery Co. v. Dodge, 145 Cal. 380, 78 Pac. 879, wherein it is held that:

"The vendor of stock in a corporation has no vendible interest in the good will of the business carried on by the corporation, and cannot transfer any part thereof."

This holding has no bearing upon the case before us; the seller of stock in a corporation does not sell the *business* of the corporation. There is a clear distinction between the California cases and the one before us, where the business was sold. We hold that upon a sale of a business and the good will thereof by a corporation, all those who, *owing to their real control of the good will of such business,* are necessary parties to any real transfer of such good will, and who, *owing to their ownership of stock in the corporation,* will be directly benefited by any increase in price received for such good will, may, upon the sale of the business and good will, bind themselves to refrain from becoming competitors, and thus decrease or destroy the value of such good will.

[3] Was the contract assignable? We think that, under all the authorities, it must be so held. Appellant cites 3 Page on Contracts, § 1259, and yet we find the author stating, and citing numerous cases in support of such statement, that "valid and reasonable contracts restraining competition" are assignable. Appellant also cites 2 Am. & Eng. Ency. of Law, p. 1035, and yet we find it there held that:

"As a general rule, in all cases where a contract is executory in its nature, and an executor or administrator would succeed to the rights and liabilities of a deceased party to the contract, the contract is assignable by the act of the parties."

Of course the defendant and C. might have specifically provided that the contract should not be assignable (2 Am. & Eng. Ency. of Law, p. 1035); but this they did not do. Paraphrasing the words of the court in Hedge, Elliott & Co. v. Lowe, 47 Iowa, 137: If the agreement not to engage in the printing and publishing business was of sufficient value to constitute in part an inducement to B. to purchase, it must be admitted that it might be equally valuable to a vendee of B. If B., because of this agreement, was induced to purchase, no good reason can be given why B. should not be able to avail himself of this agreement as a means of effecting a sale. This case comes directly under the rule that a contract in which the delectus personæ is not material is assignable; it is absolutely immaterial to defendant and C. whether B. retained the business and the contract in question or whether he transferred same to this plaintiff. If such contract had provided, as some part of the consideration running to defendant and C.,

that B. should perform some service to them, which service involved the personal skill, knowledge, or trustworthiness of B., then it would not have been assignable. 2 Am. & Eng. Ency. of Law, p. 1036. The distinction between a contract that is and one that is not assignable is clearly drawn in the case of New York Bank Note Co. v. Hamilton, etc., et al., 180 N. Y. 280, 73 N. E. 48, in which the court said:

"So an agreement by a vendor on the sale of a business and its good will not to enter into a similar business at the same place during a specified period may be assigned by the vendee on a subsequent sale of the business by him. Francisco v. Smith, 143 N. Y. 488, 38 N. E. 980. Therefore, the objection to the assignment of this contract does not lie in that feature. It lies, if at all, in those provisions of the contract which prescribe that the title to all presses manufactured by the Kidder Company for third parties shall be transferred to the New York Company, and the presses leased by that company under restrictions as to their use; the New York Company to collect from such third parties the purchase price of the presses, and account for the same to the Kidder Company."

Appellant, however, contends that, inasmuch as the contract was not with B. "and assigns," the contract was personal in its nature and not assignable. This was the contention in Hedge, Elliott & Co. v. Lowe, supra. In that case, as in this, the covenant ran to the covenantee and did not by words include his assigns. The court said:

"The question here is not whether this agreement may be the subject of transfer in the abstract, but whether it may be transferred with the business to which it originally pertained. The following cases sustain the assignability of such agreements: California Steam Navigation Co. v. Wright, 6 Cal. 258 [65 Am. Dec. 511]; Id., 8 Cal. 585; Guerand v. Dandelet, 32 Md. 562, 569 [3 Am. Rep. 164]."

The following from the opinion in Fleckenstein Bros. Co. v. Fleckenstein (N. J.) 53 Atl. 1043, is peculiarly applicable to the facts of this case:

"It does not appear that when the original purchasers from Edward Fleckenstein transferred to the corporation the business, or their interest in it, they transferred, in terms, the covenant

which Fleckenstein entered into with them, restraining him from carrying on a competing business. Nor was the covenant made by Fleckenstein with these sellers and their assigns. It is insisted, therefore, that it is a personal covenant, and not assignable. My conclusion, however, is that the covenant, if not intended to be assigned by the original covenantees when they made their transfer to the complainant corporation, about which the testimony, perhaps is doubtful—certainly unsatisfactory—at least was subsequently assignable to the party who took the business. Such covenants have all their vitality and value from their association with the business. They are intended to protect a business, to keep it, and make it valuable to the purchaser; and, even if the transfer by the purchaser to the company was not accompanied by a transfer of this covenant, the corporation might well rely upon their getting the benefit of the covenant as long as it remained in the hands of the purchasers—the original purchasers. These purchasers became interested in the corporation, undoubtedly took stock in the corporation. I think they took stock in exchange for their interest, or at least in exchange for a part of their interest. The corporation got all the benefit of it without an actual assignment. Subsequently, in my judgment, it was entirely competent to complete the whole transaction by a transfer to the corporation of the covenant; and the covenant was assignable in that way, and for the purpose for which it was assigned, and to the party to whom it was assigned."

[4] Appellant further contends that, even if it be conceded that the contract was valid and that it was assignable, the complaint fails to show that it was ever assigned to respondent. It is true that the allegations of the complaint are not as explicit as the rules of good pleading might suggest, yet we think, under the rule suggested by appellant, we are justified in holding that the complaint implies a transfer of the contract sued on, wherein it alleges that the contract was "turned over and delivered" to plaintiff. Appellant says:

"We are not quibbling over phraseology, nor burdening this court with this appeal on a matter of words which could be amended, or where the trial of the case could go on without any substantial difficulty."

Anticipating, however, that, upon the trial of this action, it may appear that there was no formal written assignment of such contract, we deem it proper to discuss the question of whether such contract can pass without such an assignment. We think that it clearly appears that respondent succeeded to the business purchased of appellant and C. by B. That being true, then, under the authorities, it succeeded to the good will of such business. Didlake v. Roden Grocery Co. et al., 160 Ala. 484, 49 South. 384, 22 L. R. A. (N. S.) 907, 18 Ann. Cas. 430. In the notes following this case in 18 Ann. Cas. 430, it is said:

"It seems to be a well-settled general rule that, where a business of any kind is sold without mentioning the good will thereof, the latter passes to the purchaser as an incident of the main business. The reason usually assigned for holding that the good will passes to the purchaser in such cases is that the good will is deemed to be incident to and inseparable from the business itself. Ex parte Punnett, 16 Ch. D. (Eng.) 226; Shipwright v. Clements, 19 W. R. (Eng.) 599; Boon v. Moss, 70 N. Y. 465; Fite v. Dorman (Tenn.) 57 S. W. 129. See, also, Tomah Bank v. Warren, 94 Wis. 151, 68 N. W. 549. And see Williams v. Farrand, 88 Mich. 473, 50 N. W. 446, 14 L. R. A. 161, to the effect that the sale or assignment of a business carries with it the good will thereof, although not specifically mentioned. In Wilmer v. Thomas, 74 Md. 485, 22 Atl. 403, 13 L. R. A. 380, the court, in discussing the question as to the passing of the good will of a business under a contract of sale thereof where no mention is made of it, said: 'Indeed, it is often the case that a large portion of the intrinsic marketable or assessable value of a manufacturing establishment consists in the good will maintained by it, and in the brands or trade-marks to which it has acquired an exclusive use, by which to denote the origin and make of its goods when placed upon the market. And so important a contribution to the value of the establishment are these elements or accessories of the business that in the sale or assignment of such manufacturing or business establishment, to be continued as formerly, the sale or transfer of such an establishment ordinarily carries with it, by reasonable intendment or implication, the right to such good will and trade-mark, as incidents to or accessories of the business carried on by the establishment.'"

While it is true that a covenant in restraint of trade will not be inferred from the sale of a business and its good will, and that there must be a distinct covenant agreeing to such restraint, yet it does not follow that, where one has sold his business and good will and entered into such a covenant, it will be necessary for there to be a separate and distinct assignment of such covenant by the covenantee in order for him to transfer the same to one to whom he transfers the business and good will. At the time such covenant is made, it, by the act of the covenantor, passes to the covenantee as and becomes an incident of the good will, and, as such incident, it passes to any one acquiring such good will. In Gompers v. Rochester, 56 Pa. St. 194, the court said:

"Again, the consideration in this case, as already said, we think was the sale of the goods and property, and the covenant was for the protection of the purchasers while they continued doing business, and would pass doubtless to their assignee. Undoubtedly it passed to F. M. Kinter, as incident to the property and business when he bought out his partners. It could not exist in their favor, after they had ceased to require its protection. In whose favor did it exist? Certainly, if it existed at all, it existed in favor of their successor, who had acquired all their interest in the store as well as in the realty. * * * The fallacy of the position of the plaintiffs in error seems to consist in regarding the covenant as attaching or incident to them personally, whereas it was alone an incident to property which they had parted with, and the business also."

· And in American Ice Co. v. Meckel, 109 App. Div. 93, 95 N. Y. Supp. 1060, it is said:

"It is also contended that, even if the bill of sale from Morse and Gilshenen relates to the property which they acquired under the bill of sale from Mulford and Meckel, still these covenants on the part of the defendant and Mulford not to engage in the business for the period of 10 years were not assigned. We are of the opinion that the plaintiff has succeeded to these covenants as an incident of the good will, which was expressly assigned."

We find the same rule recognized by the English courts. Benwell v. Inns, 26 L. J. Ch. 663; 53 Eng. Reprint, 376.

The contract sued upon was valid; it was assignable as an incident of the business and the good will thereof; and, as such

incident of the business and good will, it passed to respondent when respondent acquired such business from the covenantee in such contract.

Therefore the demurrer was properly overruled, and the order of the trial court should be and is affirmed.