## Augustine v. Fischer

*E. Charles Coslett and Charles R. Coslett,* for plaintiffs.
*Kurt J. Shaffer,* for defendants.

TOOLE, *J.,* August 3, 1982—On September 25, 1981, plaintiffs, John L. Augustine and Audrey Augustine initiated this equity action seeking to enjoin defendants, Murray Fischer and Frank Giampietro "from using or causing to be used in their business or otherwise the name 'Augustine's' and from advertising as such." Preliminary objections to the complaint were overruled by the Honorable Bernard J. Podcasy on January 4, 1982.

Defendants then filed an answer containing new matter and counterclaim, to which plaintiffs filed preliminary objections. Those objections, including a demurrer and motions to strike, are now before us for determination.

In considering and resolving the demurrer, we are required to comply with the standards set forth in Gekas v. Shapp, 469 Pa.1, 364 A. 2d 691 (1976), wherein the court stated:

"The standards for sustaining preliminary objections in the nature of a demurrer are quite strict. A demurrer admits every well-pleaded material fact set forth in the pleadings to which it is addressed as well as all inferences reasonably deducible therefrom, but not conclusions of law (citations omitted). In order to sustain the demurrer, it is essential that the plaintiff's complaint indicate on its face that his claim cannot be sustained, and the law will not permit recovery. (Citations omitted.) If there is any doubt, this should be resolved in favor of overruling the demurrer. Clevenstein v. Rizzuto, 439 Pa. 397, 266 A. 2d 623 (1970)."

The facts giving rise to the instant dispute may be briefly summarized as follows:

Plaintiffs operated a restaurant under their family name "Augustine's" at 9-11 North Walnut Street, Wilkes-Barre Township, Luzerne County, Pa., for over 26 years before selling the business to the Giglias. At the time of the sale, plaintiffs executed a document entitled "Covenant By John L. Augustine and Audrey Augustine Not To Compete" which specifically stated:

"JOHN L. AUGUSTINE and AUDREY AUGUSTINE, his wife, agree that they will not, either directly or indirectly, alone or with others, enter upon or engage in the operation of a restaurant/tavern

business within five (5) miles of 9 North Walnut Street, Wilkes-Barre Township, Luzerne County, Pennsylvania, for a term of five (5) years from the date hereof."

Following the sale, the Giglias took possession of the real estate and personal property and continued the operation of the restaurant under the name "Augustine's." On or about the beginning of September, 1981, the Giglias discontinued their opeation of the restaurant and sold all of their interest in the same to defendants who are now operating the business under the name of "Augustine's."

Plaintiffs, meanwhile, are allegedly engaged in the operation of another restaurant outside the radius set in the covenant not to compete. However, plaintiffs' advertisement of their present operation is disseminated within the restricted area. Defendants, by their counterclaim, seek to enjoin plaintiffs' advertisements as being in violation of the covenant not to compete. In addition, defendants seek monetary damages and attorney fees.

By virtue of the demurrer filed by plaintiffs, the court is confronted with the following issues:

1. Is the covenant not to compete valid?

2. If valid, is the covenant enforceable by subsequent purchasers of the business such as defendants?

3. Assuming the covenant is valid and defendants have standing, is there an alleged violation of the covenant?

In determining whether the covenant in this case is valid, we begin with an examination of the classic statement of the law in Piercing Pagoda, Inc. v. Hoffner, 465 Pa. 500, 351 A. 2d 207 (1976), wherein the court stated:

"The law in this Commonwealth for more than a

century has been that in order to be enforceable, a restrictive covenant must satisfy three requirements: (1) the covenant must relate to either a contract for the sale of good will or other subject property, or to a contract for employment; (2) the covenant must be supported by adequate consideration; and (3) the application of the covenant must be reasonably limited in both time and territory (citations omitted)."

We find all three of the criteria set forth in Piercing Pagoda, Inc. satisfied in the instant case. This court finds that the terms of the covenant are reasonably limited in both geographical extent and duration of time for a business of this type. Without belaboring the point, suffice it to say that numerous other courts have considered similar covenants and found them reasonable. See generally, 8 P.L.E., Contracts §§108, 109, 112; 18 P.L.E., Injunction, §63-65; 17 C.J.S. Contracts, §245-247.

We turn now to the second issue wherein we are required to determine whether these defendants have standing to sue on the covenant. Although the legal position of plaintiffs is not entirely clear, it would appear to the court that they contend that the covenant was a personal one to their purchaser and did not extend to subsequent purchasers.

In resolving the legal nature of this particular covenant, we must determine whether it is a personal one between the original contracting parties which cannot be enforced by a subsequent purchaser of the business, or whether it is one which may be termed real and under the instant facts, enforceable by defendants as subsequent purchasers.

Our analysis begins with an examination of the seminal Pennsylvania case on the subject, Gom-

pers v. Rochester, 56 Pa. 194 (1867). In that case, plaintiffs purchased defendant's store and the real estate upon which it was situate. Defendant-seller covenanted that he would not engage in the same business within a radius of ten miles for a period of five years. The purchasers consisted of three partners. Subsequent to the initial transaction, two of the partners sold their interest to a third who subsequently sold his interest to the original vendor, Rochester, whom he also agreed to release from the covenant not to compete. Plaintiffs argued that upon dissolution of the partnership, no one of the former partners had the power to rescind the covenant not to compete because the covenant attached and was incident to them personally. The Supreme Court rejected this position stating (p. 198):

"The fallacy of the position of the plaintiffs in error seems to consist in regarding the covenant as attaching, or incident to them personally; whereas, it was alone an incident to the property which they had parted with, and the business also. It would not have been binding for want of consideration, unless as incident to the property sold at the time of the relinquishment covenanted for. I doubt if any case can be found in which such a covenant has been enforced, where it had no effect to protect the business or trade of the covenantee. Indeed it would be against public policy, and every principle upon which such contracts are sustained."

The court reiterates this point by concluding that the covenant passed with the business, which it had been its object to protect.

Although we have discovered a scarcity of subsequent Pennsylvania decisions addressing the issue at bar, our research reveals a plethora of cases

in other jurisdictions squarely addressing the problem:

In Public Opinion Pub. Co. v. Ransom, 34 S.D. 381, 148 N.W. 838 (1914), the South Dakota Supreme Court noted the above mentioned language from Gompers and stated (p. 842):

"At the time such covenant is made, it, by the act of the covenantor, passes to the covenantee as and becomes an incident of the good will, and, as such incident, it passes to anyone acquiring such good will."

Similarly, in Sickes et al. v. Laumar, 185 Iowa 37, 169 N.W. 670 (1918), the Iowa Supreme Court commented (pp. 672-673):

"It is there said that the fallacy of the argument denying the assignability of the contract is in regarding it as merely personal in character . . . . To construe such contracts as personal only when the design to so narrow or restrict their effect is not clearly expressed is to deprive them of much, if not most, of their value."

In Palmer v. Toms, 96 Wis. 367, 71 N.W. 654 (1897), the court observed (p. 655):

"To determine the question . . . the nature of the contract must be understood. It does not constitute a distinct property right, independent of the business it was designed to protect, anymore than the good will itself. The purpose of the contract being to protect the property or business to which it was related, it was an incident of, and adherent to, such property and business. It could not otherwise exist."

Virginia also holds that if a purchaser in turn sells the business, including his good will, such a cove-

nant passes as an appurtenance or an incident to, the business sold by the purchaser without a specific assignment thereof, or of the contract in which it was made: Burchell v. Capitol City Dairy, Inc. et al., 158 Va. 6, 163 S.E. 81 (1932).

The New Jersey Superior Court has also considered the nature of a similar covenant not to compete. Thus, in Nisonoff v. Cerebe, 1 Su. 577, 62 A. 2d 496 (1948), the court declared (p. 497):

"Certainly covenants of the character of which the foregoing is typical and which are intrinsic in the sale of a business have a very definite and discernible attachment to the business. They derive their vitality and beneficial value solely by reason of their association with the business sought thereby to be protected from competitive invasion (citations omitted). It seems doubtful that such covenants could have any independent legal existence and escape the restraints of public policy in the absence of their relationship to the business. (Citations omitted.)"

See also 6 Am. Jur. 2d, Assignments, § 19, p. 203.

In this case, defendants have alleged that an appraisal was conducted prior to the sale of the business to the Giglias and that with full knowledge of plaintiffs said appraisal included the value of the business' good will and was a prerequisite to the approval of financing. Defendants then further alleged that they not only purchased the right to use the name "Augustine's", but also the good will incident thereto. Under applicable legal principles, we must now accept as true the fact that defendants and Giglias specifically purchased the business' good will and that the value of the good will was a prerequisite to the approval of financing. In accordance with the cited case law, we are satisfied

that defendants as subsequent purchasers of the business, have standing to asset their rights which accrued to their sellers, the Giglias, under the covenant not to compete executed by the Augustines.

While we have concluded that the covenant is valid and defendants have standing, their victory must be termed Pyrrhic.

Defendants do not contend that plaintiffs are operating a restaurant within the prescribed area of five miles of North Walnut Street, Wilkes-Barre Township. In fact, paragraph 27 of defendants' counterclaim admits that plaintiffs are operating a restaurant outside of the prohibited zone. What defendants seek is to enjoin plaintiffs from advertising their present business within the five mile radius. We are satisfied that defendants' request is patently unreasonable and we refuse to exercise the extraordinary power of a court in equity to assist them in that regard. Were we to prohibit advertising of any kind within the five mile radius, that would, in our opinion, clearly add additional terms never contemplated by the parties at the time the agreement was initially executed. We hold and declare as a matter of law that the restrictions should not be extended or enlarged by implication. Were this court to accept the argument of defendants, the Augustines would, for all practical purposes, be precluded from placing any advertisement in the media. Indeed, the requested relief, if granted, would prohibit the Augustines from advertising in the newspaper, on the radio, or on television. Any such advertising would have to be prohibited because it would, without doubt, enter the geographic area of protection. This type of restraint is greater than ever intended or required for the protection of the business or of defendants. In addition, it would impose an undue hardship upon the Augustines by

unreasonably restricting their right to conduct and operate any type of business venture they may care to pursue.

The remaining objections of plaintiffs can also be disposed of quickly. We find no merit to plaintiffs' contention that defendants' pleading is defective because it is not endorsed with a notice to plead. A review of Pa.R.C.P. 1026 reveals no violation of its letter or spirit, and we therefore summarily dismiss this contention.

Finally, plaintiffs object to defendants' claim for counsel fees and costs, and move to have it stricken, pursuant to Pa.R.C.P. 1017(b)(2). Defendant, in his brief, concedes this point. We will simply add that there can be no recovery of counsel fees from an adverse party in the absence of an express statutory allowance, or clear agreement by the parties, or some other established exception: Chatham Communications, Inc. v. General Press Corporation, 463, Pa. 292, 344 A. 2d 837 (1975).

Accordingly, we enter the following

ORDER

It is hereby ordered, adjudged and decreed:

1. That plaintiffs' preliminary objection in the nature of a motion to strike because of lack of conformity with Pa.R.C.P. 1026 and 1361 is denied.

2. That plaintiffs' preliminary objection in the nature of a motion to strike defendants' request for attorney fees is granted.

3. That plaintiffs' preliminary objection in the nature of a demurrer to defendants' counterclaim is sustained and the same is dismissed.