LIEN, Respondent, v. NORTHWESTERN ENGINEERING
CO., et al., Appellants

(39 N.W.2d 483)

(File No. 9011. Opinion filed October 21, 1949)

Rehearing denied December 15, 1949

**Bellamy & Eastman,** Rapid City, for Plaintiff and Respondent.

**H. F. Fellows,** Rapid City, **Percy H. Helm,** Sturgis, for Defendants and Appellants.

ROBERTS, J. This action was commenced November 15, 1947, by Pete Lien against the two corporate defendants and Blair Brothers, a partnership.

It is alleged in the complaint that on or about April 27, 1946, the defendant Blair Brothers, the owner of contiguous tracts in Meade county containing valuable deposits of lime rock suitable for use in highway construction work, entered into a contract with plaintiff to continue in force for a period of three years wherein the partnership granted to plaintiff the exclusive right and privilege to remove lime rock from a described quarter section; that plaintiff was to

pay four cents per cubic yard for materials removed and that the contract contained the following restrictive clause: "In addition to the premises herein demised, the first party agrees that they will not lease or demise any contiguous or adjacent acreage owned by them to third parties for the production of sand and gravel, rock or other similar material during the term of this agreement."

It is further alleged that plaintiff made exploratory tests on the leased premises for the purpose of ascertaining the quantity and quality of lime rock deposits and the economical availability of such rock for highway construction work then about to be commenced by the state on U. S. Highway No. 14 which is in close proximity to the land described in the contract and found that such lime rock was of sufficient quality to meet the required engineering standards for such proposed construction work and that there was sufficient quantity capable of economical removal to supply the construction work on this highway; that defendant Blair Brothers had full knowledge of these facts prior to entering into the agreement and knew that plaintiff's purpose in leasing the premises was to produce material for sale to the state or its contractors and that said defendant also knew that the leased premises contained the only known supply of economically available lime rock of acceptable quality for such highway construction work.

It is further alleged that thereafter Blair Brothers conveyed all their lands to the defendant Black Hills Hereford Ranches, Inc., and that the four brothers are the sole owners and stockholders of such corporation.

It is further alleged that the defendant Northwestern Engineering Company was awarded by the state a contract for paving a portion of the highway mentioned and that said defendant obtained from plaintiff quotations for crushed rock and these were used by the company in making its estimate and bid.

It is further alleged that defendant Northwestern Engineering Company, having at all times full knowledge of the above mentioned contract and its contents and over the objections of the plaintiff, entered upon contiguous or ad-

jacent acreage owned by Blair Brothers and removed in violation of the restrictive clause of the above contract approximately 24,000 tons of lime rock.

Defendants by their answer denied the material allegations of the complaint; asserted that plaintiff's contract is unlawful and void in that it is against public policy and in restraint of trade; that it is unilateral and lacks mutuality and is without consideration; and that plaintiff's contract did not include any area of the Blair Brothers ranch aside from the quarter section described therein and sufficient acreage only for ingress and egress.

This action, based on the theory that the right to perform a contract and to reap the benefits therefrom and the right of performance by the other party are property rights and that defendants interfered with and brought about a breach of the contract of April 27, 1946, was instituted to recover the resulting damage to plaintiff. The amount of tonnage involved was admitted to be approximately 24,000 tons. There was evidence that the crushed rock was worth 75 cents per ton after deducting production costs. The jury returned a verdict of $17,280.

■ ■ It has been repeatedly stated that one who intentionally and without reasonable justification or excuse induces one of the parties to a contract to refuse to perform according to the terms thereof, with resulting damage to the other party to the contract, may be held liable in an action to recover such damage. 30 Am.Jur., Interference, § 18 et seq.; Annotation 84 A.L.R. 43. The fact that a cause of action for a breach of contract exists in favor of plaintiff does not prevent his having a cause of action in tort. Liability is not predicated upon the breach of contract, but arises from intentional and wrongful interference with contractual relations. This is clearly demonstrated in Sorenson v Chevrolet Motor Co., 171 Minn. 260, 214 N.W. 754, 756, 84 A.L.R. 35, wherein it appears that plaintiff had an agency contract which gave him exclusive territory as a dealer for defendant company. The court said: "The contract between the plaintiff and defendant corporation imposed duties and rights. This contract and the benefits therefrom constituted a property right. An intentional in-

terference therewith by one not having an equal or superior right is wrongful and precipitates liability. The intentional procurement of the breach of an existent contract, without just cause or excuse, makes him, who causes the breach, liable for resulting damages, and this is so even though he promoted his legitimate interests. When one has knowledge of the contract rights of another, his wrongful inducement of a breach thereof is a willful destruction of the property of another and cannot be justified on the theory that it enhances and advances the business interests of the wrongdoer. Fraud, misrepresentation, intimidation, coercion, obstruction, molestation, or the willful and intentional procurement of violation of contractual relations are practices which competition does not authorize." And it has been held that the liability of the parties who unite to induce a breach of the contract or aid or participate therein knowing of the existence of the contract is joint and several. Hornstein v. Podwitz, 254 N.Y. 443, 173 N.E. 674, 84 A.L.R. 1; Husting Co. v. Coca-Cola Co., 194 Wis. 311, 216 N.W. 833.

■ Defendants contend that the contract for procuring the breach of which relief is sought tended to create a monopoly, was in restraint of trade and was contrary to the public policy of the state. The defendants were not liable if there was no valid contract. The statute, SDC 13.1802, which, it is claimed, prohibited this contract provides that it shall be unlawful for persons acting in combination "to fix prices, limit production, or regulate the transportation of any product or commodity so as to obstruct, delay, or prevent competition within this state of the production, sale, purchase, distribution, or transportation of such product or commodity, or to make any combination, contract, or agreement for the purpose of doing any of said things." This statute was originally enacted, Ch. 94, Laws 1897, in obedience to the requirements of Section 20 of Article 17 of the State Constitution. We are cited to no case which holds that contract similar to the one in question is invalid as between the parties. In Miles Laboratories v. Owl Drug Co., 67 S.D. 523, 295 N.W. 292, 295, this court said: "A monopoly such as is meant by Sec-

tion 20 of Art. 17 of our Constitution exists only where all or so nearly all of a product or commodity within a community or district is brought into the hands of one man or set of men, as to practically bring the handling or production of the commodity within such single control, to the exclusion of competition or free traffic therein." The contract here relied on did not relate to any other lime rock except that on the premises of Blair Brothers. It appears from the facts before us that this may have been the most economical source of supply, but the lime rock on the Blair land did not comprise all or any large portion of such material in the community. We cannot declare the contract to be illegal under this statute. Its necessary consequence was not to fix prices, limit production, or suppress competition.

■ ■ Defendants do not claim that there was unfair dealing or mistake in entering into the contract. The parties were competent to contract and entered into the the agreement of April 27, 1946, because its terms then were evidently satisfactory to them. Defendants seek to have the restriction which the owners of the premises voluntarily assumed avoided on the ground that the restriction is unreasonable and contrary to public policy. "Generally, the tendency of the modern authorities is * * * to gauge the validity of the contract by the reasonableness of the restraint imposed as necessary to the protection of the covenantee, and as compatible with the public interest." 17 C.J.S., Contracts, § 246. In Restatement of Law of Contracts, § 515, it is said that a restraint of trade by contract is generally unreasonable "if it (a) is greater than is required for the protection of the person for whose benefit the restraint is imposed, or (b) imposes undue hardship upon the person restricted, or (c) tends to create, or has for its purpose to create, a monopoly, or to control prices or to limit production artificially, or (d) unreasonably restricts the alienation or use of anything that is a subject of property, or (e) is based on a promise to refrain from competition and is not ancillary either to a contract for the transfer of good-will or other subject of property or to an existing employment or contract of employment." It is

also stated, § 516, that the following transactions unless forming part of a ·plan to effect a monopoly are not in restraint of trade: "(a) A bargain by the transferor of property or of a business not to compete with the buyer in such a way as to injure the value of the property or business sold; (b) A bargain by the buyer or lessee of property or of a business not to use it in competition with or to the injury of the seller or lessor." In Williston on Contracts, § 1642, it is said: "The seller or lessor of property as distinguished from a business or good will may be a restrictive promise reasonably limited agree to refrain from himself engaging in a business or from disposing of his property in such a way that others can engage in a business which would impair the value of the property to the buyer ·for the purpose for which he intended to use it." It is generally recognized that a covenant on the part of a lessor not to lease other property during the term of the lease for competing business is valid. Annotations in L.R.A.1916E, 662 and 90 A.L.R.1449; Page on Law on Contracts, § 792.

■ SDC 10.0706 provides that "every contract restraining exercise of a lawful profession, trade, or business is void to that extent" except that an agreement by one who has sold the good will of a business, or by a partner in anticipation of dissolution of a partnership, not to carry on a business within specified territory and for a specified time, or an agreement by an employee restraining him within defined limits from competing with his employer after his employment ends is permissible. This statute is not relied upon by appellants, and a contention that the covenant herein is void as in violation of its terms would clearly be untenable. Decisions of this court considering the validity of contracts thereunder relate to the sale of the good will of a business or profession or the dissolution of a partnership, Prescott v. Bidwell, 18 S.D. 64, 99 N.W. 93; Griffing v. Dunn, 23 S.D. 141, 120 N.W. 890, 20 Am.Cas. 579; Brown v. Edsall, 23 S.D. 610, 122 N.W. 658; Public Opinion Pub. Co. v. Ransom, 34 S.D. 381, 148 N.W. 838, Ann.Cas.1917A, 1010; Kidder Equity Exchange v. Norman, 42 S.D. 229, 173 N.W. 728, 5 A.L.R. 1180, and no consideration therein is given to the validity and effect of a covenant similar to

the one in the instant case against leasing other property for a competing business. The provisions of this section as originally enacted, §§ 959, 960, 961, R.C.C. 1877, were adopted from the statutes of California. In the case of City Carpet Etc. Works v. Jones, 102 Cal. 506, 36 P. 841, the court points out that this statute did not introduce a new principle of law, but it simply eliminates from the controversy the question of reasonableness where a case falls within one of the exceptions. In Smith v. San Francisco & N. P. Ry. Co., 115 Cal. 584, 47 P. 582, 589, 35 L.R.A. 309, 56 Am.St.Rep. 119, the court said: "The rule invalidating contracts in restraint of trade does not include every contract of an individual by which his right to dispose of his property is limited or restrained. Section 1673, Civ. Code, makes void every contract by which one is restrained from 'exercising a lawful profession, trade, or business,' except in certain instances. But this is far different from a contract limiting his right to dispose of a particular piece of property except upon certain conditions. As the owner of property has the right to withhold it from sale, he can also, at the time of its sale, impose conditions upon its use without violating any rule of public policy." In Grogan v. Chaffee, 156 Cal. 611, 105 P. 745, 27 L.R.A., N.S., 395, cited with approval by this court in Miles Laboratories v. Owl Drug Co., supra, the court recognized that the mere fact that some restraint results does not render a contract void under the statute referred to. In D. Ghirardelli Co. v. Hunsicker, 164 Cal. 355, 128 P. 1041, the court said that it saw no reason for modifying its holding in the Grogan case and sustained a contract which it regarded as reasonable both as to the public and the parties and limited to what was fairly necessary for the protection of the covenantee. See also Pavkovich v. Southern P. R. R. Co., 150 Cal. 39, 87 P. 1097; United Farmers Ass'n of California v. Klein, 41 Cal. App.2d 766, 107 P.2d 631; Associated Oil Co. v. Myers, 217 Cal. 297, 18 P.2d 668; Great Western Distillery Products v. John A. Wathen Distillery Co., 10 Cal.2d 442, 74 P.2d 745; Gibbs v. Consolidated Gas Co., 130 U.S. 396, 9 S.Ct. 553, 32 L.Ed. 979; Miles Medical Co. v. John D. Parks & Sons Co., 220 U.S. 373, 31 S.Ct. 376, 55 L.Ed. 502; Pittsburgh Plate

Glass Co. v. Paine & Nixon Co., 182 Minn. 159, 234 N.W. 453.

Appellants in the instant case did not agree not to engage in the business of quarrying or selling rock, but only that they would not lease any contiguous or adjacent land "to third parties for the production of sand or gravel, or other similar materials." If the restriction imposed was not greater than protection to the covenantee required and was compatible with the public interest, it cannot be deemed a contract in restraint of trade.

Defendants in support of their position cite Brewer v. Marshall, 19 N.J.Eq. 537, 97 Am.Dec. 679, holding void as in restraint of trade a covenant by the grantor of land that neither he nor his assigns would sell marl from land adjoining the land conveyed. An action was brought by the successors in interest of the original grantee to enforce the covenant. In that case the court said: "The substance of this covenant is, that neither the former owner of these premises, nor his assigns, shall sell by the quantity any marl taken from these lands. This is not a restriction on the use of the land, for the marl can be dug up and used upon the land; but the restriction is on the sale of the marl after it shall have been dug up. Marl of course is an article of merchandise, and the covenant retrains traffic in that article. It prohibits the sale of it at any time, in any market, either by the owner of the lands or by his assigns. Now, it seems to me that this is a plain contract 'against trade and traffic, and bargaining and contracting between man and man.' That it is the rule that all general restraints of trade are illegal has never been doubted since the famous opinion of Lord Macclesfield in Mitchel v. Reynolds, reported in 1 P. Wms. 181."

That case appears to be in conflict with later decisions. See 13 C.J., Contracts, § 429, note 61, 17 C.J.S., Contracts, § 255. However, it is clearly distinguishable from the facts in the instant case. In that case the restriction was general as to time and the court found that it transcended "the limits of utility to the covenantee." The restriction in the instant case was limited to three years. and did not unreasonably restrict the use to be made of the

premises. Plaintiff was engaged in the business of quarrying and selling crushed rock, .and the only effect of the covenant . in question was to prevent the leasing of other land for competing business. We are of the opinion that the restrictive covenant herein was not unreasonably restrictive on the rights of the appellants and did not contravene public policy.

It is also insisted that there was no mutuality of contract between the parties and for that reason the agreement was not binding upon the defendants. The basis of this claim is that there was an obligation to sell lime rock, but no corresponding obligation on the part of the plaintiff to purchase such material. The contention is supported by the case of McCaul-Dinsmore Co. v. Heyler, 44 S.D. 418, 184 N.W. 243, holding that a unilateral agreement is invalid where one of the parties agrees to sell such quantity of material as the other party may order, but without any obligation upon the part of the latter to order or accept any such material. It was there recognized that where there is no consideration for a contract the mutual promises of the parties constitute the consideration. We think that the case cited has no application to the facts in the instant case. Where there is an agreement founded on a consideration, it is not invalid for want of mutuality because it is obligatory on one party and optional on the other. Schlegel Mfg. Co. v. Peter Cooper's Glue Factory, 231 N.Y. 459, 132 N.E. 148, 24 A.L.R. 1352. There is recital of consideration and acknowledgement of the receipt thereof in the contract.

We think that the trial court rightfully construed the language of the restrictive covenant as including the SE¼ of the SE¼ of Section 26, from which defendant Northwestern Engineering Company quarried and removed lime rock under a contract with defendant owners. The contract with plaintiff described the SW¼ of Section 36. It is admitted that the Blairs also owned the NW¼ of 36 and the S½ of the SW¼ of Section 25. The restrictive provision included "contiguous or adjacant acreage." Defendants urge that these words signify near to or in the vicinity of and not necessarily adjoining and that it was for the jury

under proper instructions to determine whether the forty acre tract from which the defendant contractor removed rock was within the meaning of the restriction. . It may be admitted that where a written contract is ambiguous and extrinsic evidence as to intention has been introduced a question of fact may arise which must be submitted to the jury. The word "contiguous" in its primary sense means in "actual contact or touch" and when applied to tracts of land it ordinarily conveys the idea that they border each other. 17 C.J.S., Contiguous, 178. The meaning of this word in the contract would appear to be plain and obviously applied to all the lands of the defendant owners adjoining or bordering on the SW¼ of Section 36. The word "adjacent" does not necessarily denote "adjoining", but is sometimes defined as "lying near" or "close". 1 C.J.S., Adjacent, 1464. The forty acre tract from which defendant Northwestern Engineering Company obtained its lime rock was within a body of land bordering on the SW¼ of Section 36 and it is not here material whether the restriction applied to tracts not adjoining, but not widely separated. We conclude that there was no fact question in this respect for the jury

■ Defendants also insist that it does not appear from the evidence that plaintiff sustained more than nominal damages; that there was no obligation on the part of the Northwestern Engineering Company to purchase lime rock from plaintiff; that if that company had procured such material elsewhere it would have afforded plaintiff no cause of action; that no lime rock was taken from the Blair land for which plaintiff had a market and consequently the wrongful taking caused no loss of profits to plaintiff; and that if there was any liability the instructions informing the jury, in substance, that the measure of damage was the market value of the crushed rock at the time of its removal from the premises less what it cost to produce it including royalty were erroneous.

The Blairs, as we have stated, vested plaintiff with the right and privilege of quarrying lime rock on the land described in their contract, subject to the payment of a royalty, and this action is by the owner of such right and of the

right to enforce the restrictive covenant in the contract with respect to lime rock on contiguous or adjacent land. True, the Northwestern Engineering Company was not a party to that contract, but it had full and actual knowledge of its terms. Plaintiff having such exclusive rights with respects to the lime rock on the Blair land, the Northwestern Engineering Company had no lawful right to enter thereon and take lime rock. The damages, if any, are not for the breach of the contract but for tort and include the loss or detriment proximately caused by the wrongful act of defendants.

The instant case presents a situation similar to that found in Garden City Sand Co. v. Southern Fire Brick & Clay Co., 260 Ill. 231, 103 N.E. 207, Ann.Cas.1914D, 173. In that case the owner of land contracted to supply plaintiffs with fire clay and agreed not to work, lease or operate any other fire clay plant on his land during the period of the contract or to sell such product to other persons than the plaintiffs. Defendant company with actual and constructive knowledge of the contract bought a part of the land described in the contract and erected a plant thereon for the production of fire clay. Defendant asserted that it could not be held liable for damages and that the only relief obtainable was an injunction restricting it from removing fire clay. The court concluded that plaintiffs were entitled to the profit they might have made on the clay taken from the land purchased by defendant. There was in that case the comparable situation that plaintiffs were not prevented from obtaining the materials contracted for and were not wrongfully prevented from transacting or carrying on a business. The court recognized that a loss of probable profits in the business of the plaintiffs was not a proper element of damages. So in the instant case, admittedly plaintiff had the exclusive right to enter upon, excavate and remove rock from the Blair land. The case is not materially different from what it would be if the encroachment were on the quarter section described in the contract. The contention of defendants is tantamount to saying that plaintiff must submit to an invasion of those rights and a practical destruction of his so called leasehold without re-

dress. We conclude that the loss of profits that plaintiff might have made on the rock taken resulted directly and proximately from the wrongful acts of the defendants.

It seems to us that this is a case in which the loss to plaintiff can be measured only by allowing him to recover the value of the crushed rock, less the cost of production. See 58 C.J S., Mines and Minerals, § 137. The trial court correctly applied this rule in instructing the jury as to damages.

The judgment appealed from is affirmed.

SMITH, P. J., and RUDOLPH, J., concur.

SICKEL, J. (dissenting). If I understand the majority opinion correctly it is based upon the proposition that the contract between Lien and Blair Brothers is a lease of real property; that the restraining clause relates to the use of other real property belonging to Blair Brothers, and was incorporated in the lease for the protection of Lien under the lease; that the restraint is valid if reasonable for such protection.

As stated in the majority opinion, the contract gave Lien the exclusive right to remove from a quarter section of land, lime rock suitable for highway construction, and in addition provided that Blair Brothers would not permit the removal of similar products from any other "contiguous or adjacent acreage owned by them" during the three-year term of the agreement. This, in my opinion, constitutes a license, not a lease of real property. Schnuerle v. Gilbert, 43 S.D. 535, 180 N.W. 953.

It is undisputed that, with knowledge of the Lien contract, defendant, Northwestern Engineering Company, removed twenty-four thousand tons of lime rock from such "contiguous or adjacent acreage" under a contract with Blair Brothers. Lien claims that this constituted a breach of the restraining clause contained in his contract with Blair Brothers. Defendants claim that the clause in question is in restraint of lawful trade and business and that it is therefore void.

SDC 10.0706 provides: "Every contract restraining exercise of a lawful profession, trade, or business is void to

that extent, except: (1) One who sells the good will of a business may agree with the buyer to refrain from carrying on a similar business * * *."

It cannot be seriously questioned that the clause of the contract by which Blair Brothers agreed to sell or remove no lime rock from contiguous or adjacent land is in restraint of a lawful business, and that it is void unless it comes within the exception of Subdivision (1) of the above statute. This is clearly pointed out in the opinion of Hayes, J., filed in this case. To come within that exception the restraint must be a part of a contract for the sale of the good will of a business. Kidder Equity Exchange v. Norman, 42 S.D. 229, 173 N.W. 728, 5 A.L.R. 1180. "Good will exists as property merely as an incident to other property rights and is not susceptible of being owned and disposed of separately and apart from the property right to which it is incident." 38 C.J.S., Good Will, § 3.

This contract relates to the business of selling lime rock from the Blair Brothers' land. There is no evidence in this case to show that Blair Brothers ever engaged in the business of selling lime rock from their land, and without such a business Blair Brothers could have no good will to sell. Public Opinion Pub. Co. v. Ransom, 34 S.D. 381, 148 N.W. 838, Ann.Cas.1917A, 1010.

Neither is the agreement between the parties one of purchase and sale. The contract was a standing offer by Blair Brothers to permit the removal of rock by Lien from the quarter section of land. This offer was subject to acceptance by Lien at any time during the three-year term of the contract. As Lien might have, at any time, removed rock from the land or obligated himself by the sale of rock to others he could have brought about an acceptance of the Blair offer to sell and in such case the contract of purchase and sale would be complete as to the extent of such acceptance. Lien never removed any rock from the quarter section of land, and never sold any rock for removal from the land. Consequently, the offer to sell by Blair Brothers was never accepted by Lien and no sale of rock ever took place. McCaul-Dinsmore Company v. Heyler, 44 S.D. 418, 184 N.W. 243; Hopkins v. Racine Maleable & Wrought Iron Co.,

137 Wis. 583, 119 N.W. 301; Wickham & Burton Coal Co. v. Farmers Lumber Co., 189 Iowa 1183, 179 N.W. 417 14 A.L.R. 1293, Anno. 1300.

It is, therefore, my opinion that the clause in question restrains the exercise of a lawful business under circumstances not permitted by the exception contained in SDC 10.0706, and that the clause is therefore void.

HAYES, J. (dissenting). I cannot subscribe to the view of the majority that the restraining clause in the contract before us is valid. In my opinion the provisions of our code, former decisions of this court and the decisions of courts of other jurisdictions wherein the same or similar statutory provisions are in force impel a holding that the clause in question is void.

The record we here review discloses that Blair Brothers are engaged in cattle raising in Meade County and are the owners of quite extensive ranch holdings, about 25,000 acres. The home ranch, comprising 7,000 acres, is located about four and one-half miles south of the City of Sturgis and along the main highway, U. S. No. 14, between said city and Rapid City, this state. It appears that this home ranch lies on both sides of the highway. Aware of the contemplated paving of this section of U.S. Highway No. 14, with the consent of Blair Brothers and before entering into the contract hereinafter set forth, the plaintiff explored some of the ranchers' lands in the vicinity of the highway for the purpose of locating thereon deposits of lime rock suitable for the paving project. Plaintiff and Blair Brothers then entered into an agreement in writing as follows:

"This Agreement made and entered into in triplicate this 27th day of April, 1946, by and between Blair Brothers of Meade County, South Dakota, party of the first part, and Pete Lien, 201 Buell Building of Rapid City, Pennington County, South Dakota, party of the second part:

"Witnesseth: The party of the first part, in consideration of the payment of One Dollar in hand paid, receipt of which is hereby acknowledged, agrees to and hereby does convey and grant to the party of the second part the exclusive right and priviledge to, at any and all times during

the term hereinafter provided for, enter upon, produce, ex-
cavate, screen and remove lime rock from all or any part
of the following described real property situate in the
County of Meade, State of South Dakota:

"South West Quarter (SW¼) of Section Thirty-Six
(36) Twp. Five (5) Range Five (5) B.H.M.

"The first party warrants their title and ownership of
said premises and the right to convey and grant the rights
and privileges herein provided.

"The first party further grants and conveys to the sec-
ond party the right to use all or any portion of said prem-
ises for the purpose of erecting any and all equipment
which may be used by it in the production of sand and
gravel, and the right to grade roads or right-of-ways to any
and all points on said property necessary or useful in the
production and removal of sand or gravel from same.

"The second party agrees to pay to the first party the
amounts and sums per cubic yard, per ton, as hereinafter
set forth for all acceptable sand, gravel, rock, clay or other
suitable material removed from said premises, total pay-
ment to be based on Engineer's Final Estimates for materi-
al used from said premises in the carrying out of any con-
struction contract which the second party has or may have
with other persons during the term of this agreement: Said
payment to be made on the 15th day of the month follow-
ing the removal of said material and to be as follows:

"Four cents (4¢) per cubic yard for crushed rock

"The term of this agreement shall be a period of three
years from date, unless both parties shall mutually agree
for the termination of this contract and the rights and
privileges herein provided.

"It is agreed and understood that the first party shall,
at all times during the term of this agreement, have the use
of any and all parts of said premises for any and all pur-
poses except the production and removal of sand or gravel,
except those portions actually being occupied and used by
the second party for the production and removal of sand or
gravel as herein provided. The second party, however,
shall have the right of ingress and egress to and from the

premises to be used by it with the right to construct suitable cattle and stock passes or to fence any rights of way which said stock passes, if constructed, shall not be removed by second party upon the termination of this agreement.

"The second party agrees to construct and maintain a good and sufficient fence around the pits and to dispose of the overburden as may be directed by the first party, but at a distance, however, not to exceed 400 feet. Second party also agrees upon the termination of this agreement to slope all sharp and precipitous banks of any pits so as to reduce any hazary to livestock from same, but shall not be required to fill up any pits or excavations resulting from the operations as herein provided.

"It Is Agreed that where water supply, other than water heretofore used in the irrigation of said premises by first party, is available on said premises, the first party grants the second party the right to use the water for the purpose of pumping and screening sand or gravel, or for whatever purpose the second party may require in connection with producing sand or gravel.

"The second party shall have the right to place on the demised premises all necessary machinery, equipment, tool sheds and other structures required by it in connection with the operation with the full right to remove all of said machinery, equipment, and structures within sixty days after the termination of this contract, either by agreement or otherwise.

"In addition to the premises herein demised, the first party agree that they will not lease or demise any contiguous or adjacent acreage owned by them to third parties for the production of sand and gravel, rock or other similar material during the term of this agreement.

"This Agreement shall be binding upon the heirs, executors, administrators or assigns of the first party; upon the successors or assigns of the second party.

"In Witness Whereof, the parties have hereunto set their hands and caused this instrument to be executed on the date first above written.

"Witnesses:

_____

_____

"Blair Bros. by

"Party of The First Part
"Enos Blair

"Pete Lien

"Party of the Second Part

"State of South Dakota ⎫
                       ⎬ ss.
"County of Meade      ⎭

"On this 27th day of April, 1946, before me a Notary Public in and for said County, personally came the Enos Blair, personally known to me to be the identical person whose name is affixed to the foregoing agreement as party of the First Part, and he acknowledged same to be his voluntary act and deed for the purposes therein set forth.

"Witness my hand and Notarial Seal the date last aforesaid.

"Ivan H. Bell
Notary Public

"My Commission Expires:
    "June 1, 1949"

It is undisputed that Blair Brothers were at no time in the rock producing business prior to the making of this agreement.

The significant allegation in plaintiff's complaint respecting the premises covered and referred to in the agreement is as follows: "That such defendants also well knew, and were so advised by plaintiff, that such leased land and the contiguous and adjacent acreage thereto as owned by them, contained the only known supply of economically available lime rock of acceptable quality sufficient for such highway construction work."

If I correctly understand the view of the majority respecting the character of the transaction evidenced by the whole writing before us the same is by them deemed to be a lease. Also to be gathered from the opinion is the holding

that the leasing of land for the business of removing rock therefrom does not fall within the broad language of the fore part of SDC 10.0706 inhibiting all restraints against an "exercise" of lawful business. My position is that the agreement is not a lease and that regardless of its character the transaction cannot, in the face of the cited code provision, embrace a restraint upon an exercise of lawful business for the reason that the same is within the contemplation of the cited section and is not excluded by the stated exceptions. The plain purpose and intent of the restraining clause was to keep Blair Brothers out of the business of furnishing rock for the proposed paving project. To say that the leasing of land for the production of road-building material is an "exercise" of lawful business provokes no possible contradiction.

The majority opinion affixes to the restraining clause a strict and narrowed interpretation, i. e., that Blair Brothers did not agree not to engage in the business of quarrying or selling rock, but only that they would not lease any contiguous or adjacent land "to third parties for the production of sand or gravel, or other similar materials". If we are to adhere to the strict letter of the restraining clause, and dismiss for the moment its plain purpose and intended effect, we note that Blair Brothers agreed that they would not **"lease or demise** any contiguous or adjacent **acreage,"** etc. Should we say that this clause means exactly what it says and nothing else we should then turn to the transaction between the Blair corporation and Northwestern Engineering Company and determine whether that transaction was in fact and in law a violation of the restraining clause we measure by the letter. If Blair Brothers did not agree not to engage in the business of selling rock then certainly the fact that they did so was not a breach of the restraining clause.

The fact is that the transaction between the Blair corporation and Northwestern Engineering Company does not at all measure up to a "lease" or "demise". The writing evidencing this latter transaction grants to the engineering company "the exclusive option to purchase the gravel and rock" from a small part of the ranchers' land. Giving an

option to purchase rock is not a leasing or demising of acreage. Accordingly, Blair Brothers, through their corporation, did nothing but engage in the business of selling rock and this, I agree, they clearly had a right to do.

I agree also that $1 is a sufficient consideration for the license to remove rock. I think, however, that such a sum could not create in the lands of Blair Brothers an interest in Lien deserving of the protection sought by the restraining clause. And no consideration whatsoever supports the clause against competition, an indispensable requisite to the validity of such an agreement.

I look upon the agreement as a license and nothing more or different and am supported in this vew by the holding of this court in Schnuerle v. Gilbert, 43 S.D. 535, 180 N.W. 953. Cf. Price & Baker Co. v. Madison, 17 S.D. 247, 95 N.W. 933. The exact character of the writing is perhaps unimportant except as we view the applicability of SDC 10.-0706 and the effect thereof upon the clause of the writing restraining an exercise of lawful business. The question is simply whether the cited code section outlaws restraints upon an exercise of lawful business, with the exception of transactions expressly permitted by said code section. Licenses and leases are not included among the enumerated exceptions.

As pointed out in the majority opinion, counsel do not rely upon SDC 10.0706. I confess to have not confined my study of this particular question to the authorities presented in the thorough briefs of able counsel and to have invoked the statute as a bar against the validity of the restraining clause. With the view of those of my colleagues who regard my position as untenable I respectfully disagree. To others who have occasion in the future to study the matter I leave the decision whether I have drifted afield.

From territorial days until the adoption of our present code, and carried under the heading "Unlawful Contracts", the code provision respecting restraint of trade read thus: "Every contract by which any one is restrained from exercising a lawful profession, trade or business of any kind, otherwise than as provided by the next two sec-

tions, is to that extent void." See section 898, Revised Code of 1919, and prior codes. The legislature of 1929, by an amendment to section 900, Revised Code of 1919, added a provision allowing certain of those engaged in licensed professions to agree upon the matter of competition. Such amendment further relaxed the inhibition declared by said section 898 to the extent only that an employee and his employer might agree, within stated limits, upon a restraint of an exercise of a lawful profession. SDC 10.0706, now found under the heading "Unlawful Contract Provisions", declares every contract restraining exercise of a lawful profession, trade or business, except certain agreements thereby expressly authorized, to be void to that extent. The revision has not changed the law. Allowing to this section a common interpretation, the law of the state provides that there can be no valid contract provision restraining an exercise of lawful business unless the same falls within one or the other of the enumerated exceptions, and unless the restraint embraces no more than stated limits of time and space. To such a statute the familiar maxim, "Expressio unius est exclusio alterius", or the expression of one thing is the exclusion of another, must surely apply. If this is not so then all persons, judges included, are denied the guide afforded by the law of the state intended to govern a transaction such as is here reviewed and it may again be truly said: "In such a case there is no measure of what is necessary to the protection of either party, except the vague and varying opinions of judges as to how much, on principles of political economy, men ought to be allowed to restrain competition." See Milgram v. Milgram, 105 Ind. App. 57, 12 N.E.2d 394.

The opinion of the majority cites the former decisions of this court wherein the validity of contract provisions restraining an exercise of a lawful business, trade or profession was considered. It is clear that in none of the cited cases has this court passed upon a covenant such as we now adjudge. I think it should be pointed out also that said decisions have in each case given full effect to our statute and that in none of them is there a suggestion that such contract provisions in transactions other than those

expressly excepted from the general inhibition of the statute should be upheld in this state. On the contrary, from Public Opinion Pub. Co. v. Ransom, 34 S.D. 381, 148 N.W. 838, 839, Ann.Cas.1917A, 1010, it is fairly deducible that this court viewed the cited code section as altogether controlling and exclusive with respect both to transactions to which a restraint against competition may be incident and the "reasonableness" of such restraint. After referring to the general attitude of the courts of this country and England regarding contracts in restraint of trade, the opinion precedes quoted code provisions with the following observation: "In a very few states, among them being this state, the Legislatures, disregarding the fact that what might be a reasonable restraint, either as to time or territory, under certain conditions, would not be reasonable under other conditions, have enacted statutes fixing limitations both as to time and territory."

Emphasizing that under both the common law and our code there must be a transfer of the good will of a business to the protection of which the contract in restraint of trade is incident and supporting, this court unequivocally held that our statute has declared what is a "reasonable" restraint of trade.

Decisions of the courts of other jurisdictions wherein the same or similar statutory provisions relating to contracts restraining an exercise of lawful business are in force fully sustain the view that restraints of trade can be valid only if they fall within the exceptions and limits as by legislative acts specifically provided. The states wherein these decisions were handed down were without doubt some of the "very few states", referred to by Whiting, J., in Public Opinion Pub. Co. v. Ransom, supra, in which statutes such as ours determine what restraints upon lawful business are valid. Cases I have reviewed include those cited and referred to as support for the statement of the rule in 17 C.J.S., Contracts, § 258, as follows: "Under statutes in several of the states generally providing that every contract by which one is restrained from exercising a business or calling is void to that extent, except that an agreement by one who has sold the good will of a business, or by

a partner in anticipation of dissolution of a partnership, not to carry on a similar business within specified territory and for a specified time is permissible, a contract in restraint of trade may be valid only within the limits fixed."

The case of City Carpet, Etc. v. Jones, 102 Cal. 506, 36 P. 841, construed in the opinion of the majority, was expressly repudiated in Merchants' Ad-Sign Co. v. Sterling, 124 Cal. 429, 57 P. 468, 46 L.R.A. 142, 71 Am.St.Rep. 94.

The leading case in California is Vulcan Powder Co. v. Hercules Powder Co., 96 Cal. 510, 31 P. 581, 31 Am.St. Rep. 242. I take from the opinion in that case the following: "At common law, originally, all contracts which in any degree tended to the restraint of trade were void; but afterwards the rule was relaxed so as to countenance contracts for the partial restraint of trade,—that is, contracts in which the restraint was confined to reasonable limits of time or place, and which were founded upon sufficient consideration, etc. Quite a full statement of the rule at common law is to be found in Wright v. Ryder, 36 Cal. [342] 356. The rule, however, was uncertain, and led to much perplexing legislation; and the law upon the subject in this state is now declared in section 1673 of the Civil Code. That section is as follows: 'Every contract by which any one is restrained from exercising a lawful profession, trade, or business of any kind, otherwise than is provided by the next two sections, is to that extent void.' The next two sections merely provide that one who sells the good will of a business may agree not to carry on a similar business within a specified county or city; and that, in anticipation of a dissolution of a partnership, a partner may agree not to carry on a similar business within the city or town where the partnership business is transacted. Neither of these two exceptions applies to the case at bar; and, if the contract here sued on is obnoxious to said section 1673, then the demurrer was properly sustained, and the judgment should be affirmed."

In Merchants' Ad-Sign Co. v. Sterling, supra, the California court held squarely that unless a contract provision restraining an exercise of lawful business is incident or ancillary to a transaction expressly declared by statute to

be excepted from the general inhibition the same is void. To the same effect is Dodge Stationery Co. v. Dodge, 145 Cal. 380, 78 P. 879.

In Getz Bros. & Co. v. Federal Salt Co., 147 Cal. 115, 81 P. 416, 417, 109 Am.St.Rep. 114, it is written: "That these covenants are illegal as being in restraint of trade, against the express mandate of the law of this state and of the United States. we entertain no doubt. Section 1673 of our Civil Code is as follows: 'Every contract by which one is restrained from exercising a lawful profession, trade or business of any kind, otherwise than is provided by the next two sections, is, to that extent, void.' The only exceptions contemplated by the succeeding sections are to the effect that a vendor who sells the good will of his business may agree not to carry on a similar business within a single specified county or city so long as the buyer, or any person deriving title to the good will from him, carries on a like business therein; and that a partner, in anticipation of the dissolution of a partnership, may agree not to carry on a similar business within the city where the partnership business was transacted. Saving for these two classes of agreement, all others which restrain the exercise of a lawful business, trade, or vocation are void."

See also Chamberlain v. Augustine, 172 Cal. 285, 156 P. 479; General Paint Corporation v. Seymour, 124 Cal.App. 611, 12 P.2d 990; Summerhays v. Scheu, 10 Cal.App.2d 574, 52 P.2d 512.

The cases of Grogan v. Chaffee, 156 Cal. 611, 105 P. 745, 27 L.R.A., N.S., 395; Miles Medical Co. v. John D. Parks & Sons Co., 220 U.S. 373, 31 S.Ct. 376, 55 L.Ed. 502, and D. Ghirardelli Co. v. Hunsicker, 164 Cal. 355, 128 P. 1041, cited in the majority opinion, should be read together and in the order just cited. I fail to find in these or in other opinions handed down in California a decision upholding a restraint against an exercise of lawful business unless such restraint is clearly not within the contemplation of the statute. Indicative of the holdings of that court in respect to transactions not within the contemplation of the statute is the decision, cited in the majority opinion, in Great Western Distillery Products v. John A. Wathen Distillery

Co., 10 Cal.2d 442, 74 P.2d 745, 746, wherein it is declared: "In our view of the contract its terms indicate that it was entered into, **not for the purpose of restricting any trade or business, but for the purpose of promoting one. * * *** 'Statutes are interpreted in the light of reason and common sense, and it may be stated as a general rule that courts will not hold to be in restraint of trade a contract between individuals, **the main purpose and effect of which are to promote and increase business in the line affected,** merely because its operations might possibly in some theoretical way incidentally and indirectly restrict trade in such line.'" (Emphasis supplied.) The striking difference between a contract such as was before the court in the case last cited and the one now before us is readily apparent. Of the latter it must be said that the purpose of the restraining clause was to grant to plaintiff Lien a monopolistic grip upon "the only known supply of economically available lime rock of acceptable quality for such highway construction work" and vest in him also the opportunity to exact from the public, the state, a price for rock unaffected by rock sought to be removed from the market by the invalid restraining clause. Not alone from the contract and from plaintiff's complaint do we determine his design. His testimony establishes beyond dispute that his deal with Blair Brothers was calculated to "tie up" all of the suitable rock in the community of the highway project. This attempt on plainttiff's part to create a monopoly cannot be justified simply by the fact that other rock was available at considerable distances burdened with a haulage cost of six cents per ton mile. A haul of twenty-four thousand tons a distance of twenty-five miles at a cost of $36,000 indicates the effect of the grab intended by the restraining clause. That the purpose of this clause was inimical to the public interests is badly patent. These facts were all before the trial court when plaintiff rested his case and defendants' motion for a directed verdict was denied. The denial of said motion is an assigned error.

The statutes of North Dakota and Oklahoma on restraint of trade read exactly as did ours prior to the 1929 amendment mentioned above and our 1939 code revision.

In Mapes v. Metcalf, 10 N.D. 601, 88 N.W. 713, 716, it is written: "The principles upon which contracts in restraint of trade have been held void by the courts of England and this country proceed upon the theory that the public welfare demands that private citizens shall not be allowed, even by their own voluntary contract, to restrain themselves unreasonably from the prosecution of trade, callings, or professions, or from embarking in business enterprises in the promotion and encouragement of which the public has an interest. Just what amounts to a reasonable restriction becomes a question of much delicacy, to be determined upon the facts peculiar to each case. In this case, however, we are freed from the embarrassment of judically determining whether the restraints imposed by this contract are reasonable or unreasonble, by an express statute upon the subject." See also Brottman v. Schela, 52 N.D. 137, 202 N.W. 132, and Olson v. Swendiman, 62 N.D. 649, 244 N. W. 870. From Hulen v. Earel, 13 Okl. 246, 73 P. 927, 930, the following: "But, no matter what may be the rule in other states governing this class of contracts, we have a statute which governs such contracts in this territory." Again in Wesley v. Chandler, 152 Okl. 22, 3 P.2d 720, 722, Swindall, J., with frequent reference to Williston on Contracts, for the Supreme Court of Oklahoma says: "Among the grounds on which agreements in unreasonable restraint of trade are held illegal are the injury to the seller and those dependent upon him by reason of the deprivation of his rights, and the injury to the public resulting from unreasonable lessening of competition or the creation of, or the tendency to create, a monopoly. It would seem that our Legislature was concerned to an inordinate degree with the possible injury to the public." The same may fairly be said of SDC 10.0706, but our statute lies before us as the rule by which the validity of restraints upon an exercise of lawful business are to be judged.

In E. S. Miller Laboratories, Inc., v. Griffin, Okl.Sup., 194 P.2d 877, 3 A.L.R.2d 519, (opinion dated June 15, 1948), referring to the common law rule, which is now generally termed the "rule of reason", the Oklahoma Court mentions the holding of this court in Prescott v. Bidwell, 18 S.D. 64,

99 N.W. 93 and quotes from Vulcan Powder Co. v. Hercules Powder Co., and Olson v. Swendiman, both cited above, in determining the effect of the statutes of that state upon the so-called rule of reason. Pointing out that the contract before the court would be valid in states where the common law rule prevails, the decision avoids the restraint upon the ground that the same is inhibited by section 217 of the Oklahoma code 15 U.S.1941 § 217, corresponding with the fore part of SDC 10.0706.

Numerous decisions similar to the opinion of the Minnesota Court in Pittsburgh Plate Glass Co. v. Paine & Nixon Co., 182 Minn. 159, 234 N.W. 453, 455, cited in the majority opinion, are in the books. From the Minnesota case it is obvious that the statute of that state is not at all like SDC 10.0706. It is plain also that the court in that case looked upon the contract there in question as not prohibited by the statute The opinion quotes from a prior Minnesota case as follows: **"If the necessary effect of the combination is to stifle or to directly or necessarily restrict free competition, it is under the ban of the law, whatever may have been the intention of the parties.** But if 'it promotes and but remotely and incidentally restricts competition, while its main and chief effects are to foster the trade and increase the business of those who make and operate it, then it is not a contract, combination, or conspiracy in restraint of trade within the true interpretation of this act, and it is not subject to its denunciation.' " (Emphasis supplied.) Clearly, this case falls in the same category as that of Great Western Distillery Products v. John A. Wathen Distillery Co., supra.

Altogether independent of statute the general view of the courts is as declared in Restatement, Contracts, § 515: "A restraint of trade is unreasonable, **in the absence of statutory authorization** * * *, if it * * * (c) tends to create, or has for its purpose to create, a monopoly, * * * or (e) is based on a promise to refrain from competition and is not ancillary either to a contract for the **transfer** of good will or other subject of property * * *." (Emphasis supplied). That the license held by plaintiff had for its purpose the

creation of a monopoly and was not a contract for the **transfer** of property is readily palpable.

It must be agreed that in the instant case we had not a buyer, nor even a lessee, of a business or other property. Lien was but a licensee carrying a hope that he might have or find a buyer for products his license allowed him to take from a small part of the ranchers' land. The restraint therein written is not only contrary to the policy of express law but it is clearly against the express provision first found in said code section and therefore unlawful and unenforceable. SDC 10.0701. Nor can the restraint obtained by plaintiff withstand the test under the rules by which the courts, without benefit of statute, have sought to appraise the elusive quality of reasonableness. A sustained review of cases bearing upon the question has revealed no reported decision upholding a transaction at all comparable to the one brought before us by this appeal. Also, my conception of justice excludes the theory upon which it may be said that for $1, a mere licensee in this state can tie up the rock business in a community and then recover over $17,000 because he "might have made" such a profit as a result of the monopoly he intended to create against the interest of the public in the construction of a state highway. The bare statement of the deal refutes its legality.